**NATIONAL LABOR RELATIONS BOARD v. GULF PUBLIC SERVICE CO.**

No. 9680.

Circuit Court of Appeals, Fifth Circuit.

Jan. 8, 1941.

Rehearing Denied Feb. 1, 1941.

Public Service Company, on July 9, 1938, struck, "to try and enforce the company into an agreement." Thirteen employees participated in this strike. The company notified the president of the union that the services of the strikers would be no longer required and each striker was paid in full for work performed up to the beginning of the strike. On July 29 and August 11, 1938, the Board upon charges made by the Local, issued a complaint and supplemental complaint. There were hearings and an intermediate report of the examiner, followed by the Board's decision against respondent. In it the Board found that respondent discouraged membership in the union; interfered with the rights of its employees, guaranteed by Section 7 of the Labor Relations Act, 29 U.S.C.A. § 157; refused to bargain collectively with the union though it was the exclusive representative of the employees in an appropriate unit; that the thirteen employees who went on strike because of this refusal, had been discharged to discourage membership in the union; and that respondent had dominated and interfered with the formation and operation of the Gulf Public Service Company Employees Cooperative, an independent labor union, and contributed support to it.

Upon these findings the board issued its cease and desist order and an affirmative order, requiring respondent, to offer reinstatement with back pay to the thirteen employees, to refuse to recognize the Cooperative, and upon request to bargain collectively with the I. B. E. W., as the exclusive bargaining representative of the employees. This petition is to enforce that order. Respondent assails it as entered without jurisdiction and as unsupported by evidence.

Its jurisdictional point is that, a Local Public Service Company, engaged exclusively in furnishing light and power intrastate, its activities are beyond the jurisdiction of the board. Its point on the evidence is, that while it did refuse to bargain with the union, it did so not to discourage membership in the union, but because the union did not represent the majority of its employees and that its refusal was not only not wrong, but was required under the law. The point it makes against the decision and order on the evidence therefore, is that the board in order to find that the Local was the representative of the majority of the employees, made an ar-

Robert B. Watts, Gen. Counsel, National Labor Relations Board, and Frederick M. Davenport, Jr., Atty., N. L. R. B., both of Washington, D. C., for petitioner.

William Harrison Shook and John Louis Shook, both of Dallas, Tex., and Summers A. Norman, of Jacksonville, Tex., for respondent.

Gordon Simpson, of Tyler, Tex., for intervener.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

International Brotherhood of Electrical Workers, Local No. 790, having failed to obtain a bargaining agreement with Gulf

bitrary classification of an appropriate unit, and this classification, being unsound and unreasonable, the findings and the order based on them, fall.

Upon the question of jurisdiction, the board points to the fact that the company furnishes power to companies doing an interstate business,[1] and that in addition it buys annually, several thousands of dollars worth of material from out of state. It insists that within the plain terms of the statute as construed by the courts,[2] the activities of respondent are within the stream of traffic, commerce, or communication among the several states, that labor disputes in connection with its business, would tend directly to burden or obstruct commerce or its free flow, and such disputes are, therefore, within the board's jurisdiction.

Upon the questions of whether there is substantial evidence to support its findings, that the company had interfered with the employees in the exercise of their right to self-representation, and had discouraged their membership in the union, the board points; to the settled attitude and policy of the company toward the union; its first refusal in 1935 to bargain with it; the strike; the one year contract; its refusal thereafter to make a contract; and the general attitude of opposition of the company as expressed by Mr. Rand, its district manager, to contracting with an affiliated union. Upon the fact issue of an appropriate unit, the board declares that this attitude of the company made itself felt, in the persistent refusal to bargain with the union upon the basis of the unit as recognized in the former contract and that the insistence that a new appropriate unit should now be recognized was a part of the general scheme and plan not to bargain with or recognize the union. It also insists that the designation it made of the appropriate unit may not be characterized as arbitrary but as well within the wide

discretion vested in it under Section 9 (b) of the statute, 29 U.S.C.A. § 159(b).

We agree with the board. It is true as respondent urges that its business is largely, indeed almost entirely, intrastate and that disturbances in connection with its business could have but little direct effect on interstate commerce. Indeed, when the relatively small amount of material purchased from out of the state, about $65,000, and the relative unimportance of its service to agencies doing business interstate, and particularly the few employees involved, according to the board's finding only 24, it is clear that the direct effect on interstate commerce of any labor disputes in this small East Texas business, would be comparatively infinitesimal, and that taking cognizance of such disputes, is drawing a fine bead at a gnat's heel, indeed, is almost a reductio ad absurdum, a running of the Act, its purposes and policies, into the ground. But the question before us is not one of the wise exercise of, but of the existence of, power, and upon that issue it cannot be maintained upon this record, that such disturbances could have no direct effect. As we read the decisions which have construed the Act, we are constrained to the view that they hold that in providing machinery for the adjustment of labor disputes, the Congress fixed no standard of degree by the use of which it can be said, as a matter of power rather than of wise policy, that a particular amount of probable direct interference with interstate commerce is too little to come within its cognizance. Congress undoubtedly had the power to bring within the field of Congressional supervision, all direct interference with interstate commerce, no matter how slight. Unless therefore, we can find in the Act, some qualifying term which reduces its scope to less than the whole, we must, upon the question of the power of the board, con-

---

[1] The Western Union, three railroads and ten local postoffices, two refrigerator car companies, an oil refining company, shipping part of its product interstate, and three cotton ginning companies, the larger proportion of the ginned cotton going out of the state, and one or two other small companies which received products from out of the state.

[2] Newport News Shipbuilding Company v. N. L. R. B., 4 Cir., 101 F.2d 841; N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; Southern Colorado Power Co. v. N. L. R. B., 10 Cir., 111 F.2d 539; Consolidated Edison Company v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Consumers Power Company v. N. L. R. B., 6 Cir., 113 F.2d 38; N. L. R. B. v. Bell Oil & Gas Co., 5 Cir., 91 F.2d 509.

struing the Act as it has been construed, hold that it extends to any and all enterprises, without regard to their magnitude, in which labor troubles might reasonably be said to have the probable effect of directly interfering with the free flow of *any* interstate commerce. Congress, in short, in entrusting the enforcement to the wise discretion of the board, spoke not quantitatively or fractionally or in terms of degree, but qualitatively and in comprehensive terms.

 On the controlling question of fact here, the appropriateness of the unit, because of respondent's vigorous contentions that the unit as found by the board was arbitrary, the result of juggling and legerdemain, practiced to create a predetermined unit, one in which the striking employees would have the majority, we have given most careful consideration to the record on this point. As a result of that consideration, we have reached the conclusion that much as there is to be said for the respondent's view and close to the line as the board's determination is, we cannot say, on this record, that there was no substantial basis in the evidence for its findings, that the employees who struck and were discharged constituted a majority of the appropriate bargaining unit; that there was a refusal to bargain with them; that they struck because of this; that their discharge was therefore, a discharge for legitimate union activity. We are constrained to hold that the board's order, as to the union and the discharges, finds support in the evidence and therefore must stand. The same thing must be said as to the finding regarding the "Cooperative." If the matter were one of original impression with us, it might well be that we would not find that the Cooperative originated as a company project or was interfered with, assisted or supported by it. But, viewing the question as we must, from the standpoint of whether there was substantial basis, in the evidence, to support the board's inference that it was so interfered with and dominated, we are bound to find that there was. The petition for enforcement, except as to the provision regarding the payment to governmental agencies, will be granted. An appropriate decree enforcing the order as thus modified, may be presented for entry.