### BUTLER BROS. v. NATIONAL LABOR RELATIONS BOARD.

### NATIONAL LABOR RELATIONS BOARD v. BUTLER BROS. et al.

### No. 8055.

Circuit Court of Appeals, Seventh Circuit.

March 31, 1943.

Rehearing Denied May 21, 1943.

Leland K. Neeves, of Chicago, Ill., for Butler Bros.

Morris A. Haft and Ira L. Shapiro, both of Chicago, Ill., for Alex Wasleff.

Manly K. Hunt, of Chicago, Ill., for Elevator Operators and Starters Union, Local No. 66.

Robert B. Watts, Ernest A. Gross, and Charles F. McErlean, Gen. Counsel, N. L. R. B., all of Washington, D. C., for the Board.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition by Butler Brothers, a corporation, hereinafter referred to as petitioner, to review and set aside an order of the National Labor Relations Board, issued pursuant to Sec. 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., against petitioner and Alex Wasleff, doing business as Alex Wasleff Building Maintenance Company, hereinafter referred to as Wasleff, and upon the Board's petition for enforcement of its order. Briefs and arguments have been submitted by petitioner and Wasleff in opposition to the Board's order, and in support thereof by the Board and Elevator Operators and Starters Union, Local No. 66 (the latter having been permitted to intervene).

The cause was tried upon an amended complaint, issued April 30, 1941, upon charges preferred by Local No. 66. The Board found that petitioner and Wasleff had engaged in and were engaging in unfair labor practices within the meaning of Sec. 8(1) and (3) of the Act, 29 U.S.C.A.

§ 158 (1, 3). It contains the usual cease and desist provisions and directs petitioner and Wasleff, jointly and severally, to offer reinstatement to eight and to make whole nine employees, found to have been discriminated against, for any loss of pay suffered by reason thereof. The order also directs petitioner by whatever steps may be necessary, including modification or cancellation of a certain contract entered into with Wasleff under date of July 1, 1940, to restore to its employees the same or substantially equivalent rights and privileges pertaining to conditions of employment theretofore possessed by them. The Board dismissed the discriminatory allegations of the complaint with respect to two employees.

The contested issues arise in the main from the contention of both petitioner and Wasleff (1) that the Act is not applicable, (2) that the Board's findings of fact are not supported by substantial evidence, and (3) that the order is too broad as including matters not in issue or controversy. The argument revolves to a considerable extent around the Board's conclusion that the contract of July 1, 1940 between petitioner and Wasleff was invalid because entered into for the purpose of enabling petitioner to escape its responsibilities under the Act.

We have carefully read and studied petitioner's rather elaborate analysis of the testimony, presumably in support of its contention that the order is without substantial support. Unfortunately, however, petitioner's argument, persuasive as it appears, is more appropriate for the consideration of a trier of facts than a reviewing court. Numerous recent decisions of the Supreme Court leave no room for doubt but that the prerogative of an appellate court in reviewing a factual situation found by the Labor Board or any other administrative agency is of such a limited nature as to have no practical value. The "informed judgment of an expert administrative body" [1] has been exalted to the point where its findings must, except under extraordinary circumstances, be accepted as conclusive. Moreover, many questions heretofore regarded as legal or at least mixed questions of law and fact, subject to review, have been by judicial fiat shunted into the factual category so as to further limit the function of a reviewing court. So in the instant case, as in many others, any logic or reasoning which might otherwise appeal to our sense of fairness and justice must be ignored in view of the extremely narrow limits of our authority as delineated by the Supreme Court. Thus, no good purpose can be served in dealing at length with the facts of a case such as the one before us.

■ We shall, therefore, strive at brevity by making a short statement of the evidence favorable to the Board's findings on the material issues. On the issue as to the applicability of the Act, the Board found that the activities of petitioner and Wasleff "have a close, intimate, and substantial relation to trade, traffic, and commerce among the several states, and tend to lead to labor disputes burdening and obstructing commerce and the free flow of commerce." The evidence discloses that petitioner operates in the city of Chicago two 15-story buildings known as buildings A and B, separated merely by a street. In the former, petitioner has its Chicago store and warehouse but occupies only a small portion of the latter, the remainder of which is leased by some forty tenants who are engaged generally in the manufacture, sale and distribution of goods and merchandise throughout the United States. Petitioner for the year 1939 did business with over 100,000 independent retail merchants located throughout the United States and in many foreign countries. The employees involved in the instant controversy are referred to as maintenance employees and consist of elevator operators, watchmen and janitors employed in building B. They all perform a service directly connected with and for the benefit not only of petitioner but of the numerous tenants of building B by hauling freight and passengers to and from the offices and warehouses of those occupying the building. Watchmen guard the building and the offices of the numerous tenants, and janitors clean and maintain the common stairways, lobbies and lavatories, and frequently operate the elevators as relief operators. It is at once apparent, so we think, that the services of such employees are so closely associated, if not directly connected, with the flow of interstate commerce as to be entitled to the protection of the Act. N. L. R. B. v. Fainblatt, 306 U. S. 601, 307 U. S. 609, 59 S.Ct.

---

[1] Federal Security Administrator v. Quaker Oats Co., 63 S.Ct. 589, 595, 87 L.Ed. ——, decided March 1, 1943; Phelps Dodge Corp. v. N. L. R. B., 313 U. S. 177, 195, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A. L.R. 1217.

668, 83 L.Ed. 1014; A. B. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

This is so whether they be regarded as employees of petitioner or Wasleff. There is no dispute but that Wasleff is engaged in the business of performing janitor, watchman, doorman, elevator and window cleaning service in numerous buildings owned and operated by various concerns solely in the city of Chicago. This in itself, however, does not, in our judgment, alter the status of the employees or the character of business in which they are engaged. Otherwise, we would have the anomalous situation of two sets of employees, one those of petitioner and the other those of Wasleff, both performing the same character of services, one entitled to the protection of the Act and the other not. The flow of commerce is affected or may be affected in the same manner and to the same extent, regardless of whether the employees are those of petitioner or Wasleff.

The evidence as to unfair labor practices as well as discrimination naturally divides itself into two parts: (1) certain acts and statements by supervisory officials of petitioner prior to the contract of July 1, 1940 with Wasleff, and (2) certain acts and statements subsequent thereto by Wasleff and his supervisory officials. In this connection, it may be observed that petitioner contends it was not responsible for anything which happened after the execution of the contract and any evidence relative thereto is not binding upon and should not be considered against it. For the same reason, it is argued that irrespective of what occurred prior thereto, petitioner is not accountable for any discharges which subsequently occurred.

We now refer to the contract of July 1, 1940 by which Wasleff ostensibly became the employer of the maintenance employees involved in this controversy. For more than a year prior thereto, the contract had been the subject of conversation and negotiation between the parties. Such negotiations were carried on by J. A. Powers, petitioner's director of operations and personnel, and M. O. Harlan, petitioner's supervisory official in charge of its maintenance employees, on the one hand, and by Wasleff and Stanley Sando, his chief assistant and supervisor, on the other. The contract sets forth in minute detail the duties and responsibilities of the respective parties. No good purpose could be served in relating its numerous provisions. It is the contention of petitioner, as well as Wasleff, that the contract was in form similar to that which the latter had with numerous concerns in the city of Chicago, that it was entered into in good faith, and by its execution petitioner ceased to be and Wasleff became the employer of the maintenance employees. On the other hand, it is the theory of the Board that the contract was some sort of a device by which petitioner as an employer sought to escape its responsibility under the Act. With reference to this contract, the Board found: "The express terms of the contract leave Butler with substantial control over Wasleff and the maintenance employees. Thus, the provision allowing Butler to change the schedules for watchmen and elevator operators and to require 'incidental extra work' of the janitors within broad limitations necessarily gave Butler a decisive check upon Wasleff's operations within the building. The contract allowed either party to terminate the relationship upon 60 days' notice. It is obvious from this provision that Wasleff was obliged to pursue such policies with respect to the maintenance work as were acceptable to Butler, or incur the risk of losing the contract within a short time."

█ As to whether the contract standing alone is susceptible to the construction placed upon it by the Board, we need not decide for the reason that the Board was entitled to appraise it in connection with the circumstances which both preceded and followed its execution. There was evidence of statements made by petitioner's supervisory employees which, if believed, would lead to a reasonable inference that petitioner's motive, in part at least, in executing the contract was to escape certain demands made upon it by the Union. Furthermore, there was evidence accepted by the Board in support of the following finding: "In actual practice under the contract, as set forth above, Butler continued to direct much of the work of the maintenance employees, to exercise a controlling voice in decisions as to their hire and tenure of employment, and to formulate labor relations policy."

█ Petitioner relies strongly upon Williams v. United States, 7 Cir., 126 F.2d 129, a recent decision of this Court, in support of its contention that Wasleff was an inde-

pendent contractor. True, in the Williams case it was held that the relation of employer and employee did not exist, and that Williams as the performer of the services was an independent contractor. That case, however, is distinguishable from the instant one in at least one important aspect, and that is the amount of control retained by petitioner, as disclosed by the contract and especially by its subsequent conduct toward the employees. We cannot say but that the finding of the Board has factual support, and it follows that petitioner did not terminate its employer status by reason of the contract.

Therefore, we are of the view that petitioner and Wasleff occupied some sort of a dual capacity as employers, although their exact status is difficult to define. It appears that the Board also has had some difficulty in this respect. The Board in its findings, after discussing certain acts performed by Wasleff in connection with this dual arrangement, states, "In all other respects he acted more in the nature of a foreman than an independent contractor." Later in its decision, it concludes that by reason of the contract Wasleff became "for certain limited purposes an employer of the maintenance employees in building B," and that Butler thereafter "assumed jointly with Wasleff the role of employer of such employees, within the meaning of Sec. 2(2) of the Act." However, as we view the matter, it is not important and certainly not necessary to determine the precise legal status which petitioner and Wasleff assumed, either as to each other or as to the maintenance employees. Whether petitioner and Wasleff may properly be designated as joint employers or whether the former be treated as the sole employer and the latter merely as a foreman or agent of the former, would not affect the authority of the Board to require compliance on the part of each.

We think there is no merit in petitioner's contention that it was not bound by the statements and activities of Powers and Harlan as being beyond the scope of their authority. We are of the view that petitioner, because of the relation existing between it and Wasleff, was properly chargeable with statements and acts of the latter and his assistant subsequent to the execution of the contract. It follows that there was evidence in support of the Board's conclusion that both petitioner and Wasleff violated Sec. 157, 29 U.S.C.A., and consequently Sec. 158, section 8 of the Act.

This brings us to the Board's conclusion that petitioner and Wasleff violated Sec. 8(3) of the Act by discriminating against the nine employees named in the Board's order. Again we say that no good purpose could be served in a detailed review of the testimony with reference to each of such employees. It is enough that we have read the testimony and think it is reasonably susceptible of the inferences which the Board draws therefrom. Certainly there is proof that petitioner was desirous of excluding a Union from building B. As already pointed out, there is evidence in support of the Board's finding that this was at least a contributing motive to the making of the contract with Wasleff. There is also proof from which it may be reasonably inferred that the latter willingly and perhaps actively cooperated in such plan. All of such employees, members of the Union, mostly long-time employees of petitioner in building B, were transferred from that building to positions in other buildings serviced by Wasleff, and shortly thereafter discharged by him. While the reason assigned for such action as to some of these employees is not incredible, in fact appears reasonable and logical, yet in view of other facts and circumstances we cannot say the Board's conclusion is without substantial support.

The Board's order in general conforms with its findings and conclusions. Consistent with our holding in N. L. R. B. v. Sunbeam Electric Manufacturing Co., 7 Cir., 133 F.2d 856, decided February 6, 1943, paragraph 2(c) (3) should be amended by adding thereto the words "or any other representative of their own choosing," so that the phrase will read "that the employees are free to become or remain members of Elevator Operators and Starters Union, Local No. 66, or any other representative of their own choosing, and that respondent will not discriminate against any employee because of such membership." The order should also be amended by striking the words "successors and assigns." N. L. R. B. v. Bachelder, 7 Cir., 125 F.2d 387.

The Board's order will be modified in the two particulars thus stated, and as so modified its enforcement is allowed.

KERNER, Circuit Judge, concurs in the result.