## NATIONAL LABOR RELATIONS BOARD v. MID–CO GASOLINE CO.

No. 12522.

United States Court of Appeals
Fifth Circuit.
July 17, 1950.

452

David P. Findling, Associate Gen. Counsel, N. L. R. B., A. Norman Somers, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Elmer Davis, Chief Law Officer, Fort Worth, Tex., for petitioner.

John M. Scott, Fort Worth, Tex., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and WALLER, Circuit Judges.

HUTCHESON, Chief Judge.

Since, and pursuant to, the former opinion in this case,[1] the correct answers to the several questions therein propounded have been stipulated, supplemental findings and conclusions have been made by the Board, and its jurisdiction has been reaffirmed by it. Its conclusions in part are:

"We are here concerned with the effect of the Respondent's intrastate residue gas operations on interstate commerce, as defined by the Act. Under existing circumstances, a stoppage of the Respondent's gas production would directly and immediately increase over 5 percent the amount of gas needed by Lone Star from other sources for distribution to its Dallas consumers, including the Western Union Telegraph Co., certain interstate railroad carriers, and 12 named industrial users whose businesses affect commerce within the meaning of the Act. In view of the fact that the Respondent regularly supplies a portion of the gas used and needed by business affecting interstate commerce and that the Respondent's contribution to the supply enables these businesses to operate and function in their normal manner, we find that a labor dispute at the Respondent's plant would affect commerce.

"In determining whether or not this effect on commerce is substantial enough to warrant application of the Act, we have considered the fact that the Respondent's contribution to the total gas supply is relatively small. However, since under existing circumstances the Respondent's contribution, whether it be small or large, is necessary to fulfill the gas requirements of business affecting commerce, we find that the Respondent's business substantially affects commerce. In any event, the effect of the Respondent's unfair labor practices on interstate commerce 'is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others * * *, the total incidence of which, if left unchecked may well become far-reaching in its harm to commerce.' Polish Nat. Alliance of United States of North America v. N.L.R.B., 322 U.S. 643, 648, 64 S. Ct. 1196, 88 L.Ed. 1509.

"This principle is particularly applicable here, where we are seeking to protect business affecting interstate commerce from injury resulting from a stoppage or diminution of their normal gas requirements, which are satisfied by the pooling of gas from a number of suppliers. In our opinion, for purposes of the Act, it makes little difference whether, for physical or economic reasons, Lone Star obtains its gas from a number of different suppliers, like the Respondent, or from a single supplier. The business of supplying gas to Lone Star, regardless of the number of entities involved and the proportion supplied by each, must be viewed as a single integrated operation. To protect the commerce which is substantially affected by the total supply of gas, we find it necessary to assert jurisdiction over the labor dispute with the Respondent, whose

contribution to the total supply of gas is representative of other suppliers. Otherwise, if Lone Star obtained its supply of gas rateably from 20 different small suppliers like the Respondent and the contribution of each were deemed trivial in isolation, the entire supply of gas could be obstructed by separate labor disputes among its suppliers and the resultant effect on commerce would remain unremedied. * * *

■ "Finally, we have considered the conclusionary testimony that in the event the Respondent ceased supplying gas, Lone Star could secure an equivalent supply from other sources in the Cayuga Field by opening its valves. In this connection it is noted that the record fails to disclose the relationship of this substitute gas supply to other gas which flows in commerce or to other businesses affecting commerce. In any event, it is well settled by the highest authority that the availability of a substitute arrangement is not material, as a matter of law, to the issue of jurisdiction. N.L.R.B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L.Ed. 1226; J. L. Brandeis & Sons v. N.L.R.B., 8 Cir., 142 F.2d 977, 980, certiorari denied 323 U.S. 751, 65 S.Ct. 85, 89 L.Ed. 601. Lone Star, in the operation of its business affecting commerce has determined that its supply of gas could best be obtained in part from the Respondent and 'any outside act that would compel [it] to change [its] mode of operation would affect such business.' Pueblo Gas & Fuel Co. v. N.L.R.B., 10 Cir., 118 F.2d 304, 306."

We agree with these conclusions. In N.L.R.B. v. Gulf Public Service Co., 5 Cir., 116 F.2d 852, at page 854, this Court, in sustaining the jurisdiction asserted by the Board in a like minuscular case, wrote:

" * * * It is clear that the direct effect on interstate commerce * * * in this small * * * business, would be comparatively infinitesimal, and that taking cognizance of such dispute, is drawing a fine bead at a gnat's heel, indeed, is almost a *reductio ad absurdum*, a running of the Act, its purposes and policies, into the ground. But the question before us is not one of the wise exercise, but of the existence, of power, and upon that issue it cannot be maintained upon this record, that such disturbances could have no direct effect. As we read the decisions which have construed the Act, we are constrained to the view that they hold that in providing machinery for the adjustment of labor disputes, the Congress fixed no standard of degree by the use of which it can be said, as a matter of power rather than of wise policy, that a particular amount of probable direct interference with interstate commerce is too little to come within its cognizance. * * * Congress, in short, in entrusting the enforcement to the wise discretion of the board, spoke not quantitively or fractionally or in terms of degree, but qualitatively and in comprehensive terms."

Enforcement of the Board's order is granted. An appropriate decree enforcing it may be presented for entry.

WALLER, Circuit Judge, dissenting.