## NATIONAL LABOR RELATIONS BOARD v. FORT WORTH TRANSIT CO.

### No. 13119.

United States Court of Appeals
Fifth Circuit.

March 30, 1951.

Samuel Ross, Attorney, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, National Labor Relations Board, Washington, D. C., for petitioner.

J. A. Gooch, Fort Worth, Tex., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

McCORD, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board against respondent, Fort Worth Transit Company, brought under Section 10(e) of the National Labor Relations Act. Title 29 U.S.C.A. § 151 et seq., as amended by the Labor-Management Relations Act, 1947, Title 29 U.S.C.A. § 141 et seq.

The principal questions presented are (1) whether the Board properly found that respondent's operations affected interstate commerce in such manner as to subject it to the jurisdiction of the Board under the Act; and (2) whether the Board correctly determined that respondent had discharged a certain employee, Bill Henry Brown, because of his union activities, in violation of Section 8(3) and (1) of the Act.

The material facts, briefly stated, reveal that Fort Worth Transit Company is a Texas corporation, with office and principal place of business at Fort Worth, Texas. It is engaged in the operation of a city-wide bus transportation system, and employs a total of 673 persons. During the year ending July 31, 1945, respondent's passenger revenue was $3,639,592.96, and it transported 42,678,846 passengers.

The population of the city of Fort Worth served by respondent's busses as of November 1, 1943, was 267,856. The city contains many large industries which manufacture great quantities of products shipped in interstate commerce.[1] Respondent's busses also provide transportation within the city of Fort Worth to the terminals of nine interstate railroads, three interstate airlines, two interstate bus lines, several express companies, and an interstate communications company. Many of the employees of these various companies are transported to and from their work by respondent's busses. Several officials of the companies testified that the operations of their respective establishments would be seriously affected by any interruption of respondent's service.

The employee in question, Bill Henry Brown, was hired by respondent as a bus operator on August 20, 1944. Shortly after he was employed he became actively interested in the organization of a union among respondent's employees. There were a number of other bus drivers then employed by respondent who were vigorously opposed to the formation of a union.

On or about the 19th day of June, 1945, a fight occurred on respondent's premises between the pro-union employee, Brown, and one of the anti-union employees, Marvin "Sloppy" Anderson. Brown was hurt in the fight and complained to an assistant superintendent of respondent, Rosser, that Anderson was trying to force him to leave his employment with respondent because of his union activities. There is some conflict in the testimony as to whether Rosser knew about the fight, and also as to what took place between him and the employee Brown after the fight was over. It is claimed that Rosser displayed respondent's anti-union sentiments by taking Anderson's side in the matter, and advising Brown to leave respondent's employ or there would be further trouble. Rosser, however, testified that he informed Brown he was working for respondent, and not Anderson or the other anti-union employees, and that he did not have to quit. Brown asked Rosser for time off from work in order to see the police or some government agency regarding his protection from further assaults by the anti-union employees while he was on the job. Rosser referred him to the dispatcher, Lancaster, who granted him the leave he desired.

There is evidence that some disciplinary action was taken by the respondent after the fight, and that an effort was made to enforce the rule against fighting among its employees.[2] However, the difficulty between Anderson and Brown persisted, and another fight broke out between them several days later at a cafe across the street from respondent's property. Brown was again injured in this second encounter, and after going home and receiving treatment from his wife, he returned with his brother to seek satisfaction from Anderson. They found Anderson in company with another employee, Willie Crocker, at a place a good distance removed from respondent's premises, and administered to

1. The American Manufacturing Company, Texas Steel Company, Swift & Company, Armour & Company, Montgomery-Ward, Consolidated Vultee Aircraft Corporation, and Crown Machine and Tool Company, are among the many large industries located in the city of Fort Worth.

2. Respondent's Rule 19, relating to Cooperation among the employees, is not limited to fighting while on duty or on company property. It provides: "Employees who are quarrelsome or who persist in annoying fellow employees, or whose attitude or conduct is disturbing to discipline and harmony will not be permitted to continue in the service of the company."

Also, on June 22, 1945, respondent posted a notice on its bulletin board calling upon its employees to refrain from controversies leading to fights "while on duty or on the Company's property".

them a severe beating, as a result of which "Sloppy" Anderson was confined in a hospital for treatment of his injuries.

Instead of returning to work for respondent after his last fight with Anderson, Brown reported by telephone that he was sick and took an extended leave of absence. He made no report to respondent of the incident, and according to his testimony returned to respondent's office only to pick up his check. An attempt is made to justify his actions in this regard by testimony to the effect that he was warned of retaliation planned against him by the anti-union employees, and he was fearful that respondent would not furnish him adequate protection on the job.

Brown never returned to work, and on August 5, 1945, respondent finally dropped his name from the pay roll in accordance with its rules.[3] Some fifteen months later, on October 30, 1946, a complaint of unfair labor practice regarding the alleged discriminatory discharge of this employee was filed with the Board.[4]

■ We are of opinion the Board properly found that respondent's operations affected interstate commerce within the meaning of the Act, and that it was therefore subject to the jurisdiction of the Board. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 41, 57 S.Ct. 615, 81 L.Ed. 893; N.L.R.B. v. Mid-Co Gasoline Co., 5 Cir., 183 F.2d 451; N.L.R.B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51; certiorari denied, 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084.

■ We find no substantial or convincing evidence in this case, however, which supports the contention that the company was responsible for Brown's absence from work and resultant loss of employment. There is no evidence that any responsible officials of respondent instigated the assaults upon Brown, or that respondent ever sanctioned or condoned anti-union violence

on the part of any of its supervisory employees. Moreover, whatever reasons prevented Brown from reporting the incident and returning to work after his last fight with Anderson, they were certainly more attributable to his own actions than to any dereliction on the part of respondent or failure to discharge its obligations under the Act. Cf. N.L.R.B. v. Goodyear Tire and Rubber Co., 5 Cir., 129 F.2d 661; Cf. N.L.R.B. v. Remington Rand, Inc., 2 Cir., 94 F.2d 862.

The petition for enforcement is denied.

---

3. Respondent's Rule 36 concerning Bus Operators provides: "(a) Leave of absence will not be granted for longer period than thirty days, and then only for sufficient reason."

4. Under present law, a complaint of unfair labor practice must be filed within six months from the date of its alleged occurrence or it is barred. The Board in this case recognized that Brown could obtain no redress or back pay for the fifteen month period which intervened before the filing of his complaint.