NATIONAL LABOR RELATIONS BOARD
v. EL PASO–YSLETA BUS LINE, Inc.

NATIONAL LABOR RELATIONS BOARD
v. EL PASO–YSLETA BUS CO., Inc.

Nos. 13465, 13466.

United States Court of Appeals
Fifth Circuit.

June 28, 1951.

Harvey B. Diamond, Attorney, A. Norman Somers, Asst. General Counsel, David P. Findling, Associate General Counsel, National Labor Relations Board, all of Washington, D. C., for petitioner.

J. F. Hulse, El Paso, Tex., for respondent.

Before McCORD, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

These consolidated cases are before the Court on two petitions filed by the National Labor Relations Board, one asking enforcement of its order of September 7, 1949, and the other asking enforcement of its order of September 28, 1950, both of which orders were issued against respondent pursuant to Section 10(c) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C., Supp. III, Sec. 151 et seq., 29 U.S.C.A. § 151 et seq.

The findings of fact and conclusions of law of the first order are reported at 85 N.L.R.B. 1149, and those of the second mentioned order at 91 N.L.R.B. 84.

The El Paso-Ysleta Bus Company, Inc., herein called the Company, is a Texas corporation engaged in the transportation of passengers by motor bus between the city of El Paso, Texas, and the town of Ysleta, Texas, a distance of twelve miles. The Company owns thirteen busses, and operates eight or nine of them on scheduled runs.

■ In the operation of its bus lines the Company regularly transports to and from their places of employment employees of several large industrial enterprises, including the Texas Company, the Standard Oil Company, Phelps-Dodge Corporation, and American Smelting & Refining Corporation. The Company's busses also transport regularly to and from their work employees of some railroads which operate through El Paso and employees of the telephone company. Each of the businesses mentioned is engaged in interstate commerce. The Company's busses leave the highway and enter the Phelps-Dodge plant premises to pick up and discharge employees of that corporation. The Standard

Oil Company subsidizes the transportation of its employees by itself paying the Company for that service.

On the basis of the foregoing facts, the Board found that the Company was engaged in activities affecting interstate commerce within the meaning of the Act.

In the light of the recent case of National Labor Relations Board v. Denver Building & Construction Trades Council, 71 S.Ct. 943, we cannot say that the *maxim de minimis non curat lex* required the Board to refuse to take jurisdiction of the instant case. See also, National Labor Relations Board v. Mid-Co Gasoline Co., 5 Cir., 183 F.2d 451.

The only point other than the jurisdictional issue which the Company argues in its brief consists of an attack on the Board's findings as to the alleged discriminatory discharges of three named employees, Dennis Bostick, Audrey Currie and George Lusk. The Company contends that these employees were discharged for justifiable causes under the Act, rather than for their union activity, and that the Board's findings to the contrary are without support or foundation. After careful review, we conclude that the findings of the Board are supported by substantial evidence which may be briefly summarized as follows:

Dennis Bostick was employed by the Company as a driver in May, 1947. He was an active worker in the Union, having been a member of the executive board and participated in contract negotiations with the Company. His union activity was well known to the Company, for he had been outspoken in support of the Union and on one occasion at a meeting of the employees called by the Company, Manager Reynolds had accused him of being the union organizer. Reynolds refused to comply with a request by Bostick to transfer him to another discharged employee's run, stating that he was assigning that run to another driver, Davenport. Bostick informed Reynolds that he had seniority over Davenport, and accused Reynolds of discriminating against him because he was a member of the Union. During the course of the conversation Reynolds again accused Bostick of being a union organizer. Bostick later saw the president of the Company regarding the assignment desired, and was assured that duty assignments were made on a seniority basis and that he would speak to Reynolds about the matter. There is evidence that on that occasion President Burnham complimented Bostick with the observation, "Your work has been very satisfactory down there, the Company has never had a complaint on you". Bostick never obtained the desired assignment and several days after his conversation with President Burnham he was handed an envelope containing a check and a note signed by Reynolds which stated, "due to circumstances beyond our control your services will not be required by this Company after this date". It is without dispute that Bostick was never warned or given any prior notice of his discharge, and that Reynolds refused to give Bostick any reason for his discharge.

The employee, Audrey Currie, began her service with the Company as a driver in June, 1945. She was a union member and had been active in its behalf. She had a good record as a bus operator with the Company up until the time of her discharge, and had never been fined, reprimanded or suspended. Two days after Bostick's discharge, Currie received a telephone call from Reynolds, who informed her that her check was ready and that he had called her at home to save her embarrassment at the office. Later at the office, Reynolds gave her the check, stating "I hate to do this, but due to circumstances beyond my control, I will have to let you go". As in the case of Bostick, Reynolds refused to give Currie any specific reason for her discharge, telling her that he had been instructed not to give any reason.

Finally, with regard to the employee, George Lusk, it was shown that shortly after Lusk joined the Union Reynolds informed him that he was being laid off because the run on which he had been assigned was being discontinued. Reynolds suggested that Lusk keep in touch with him and promised to talk to him if any jobs became available. That same afternoon, however, a new driver was hired, and the following day Lusk observed another new

employee driving one of the Company busses. In contrast to the treatment accorded Lusk, Robert Newman, the other regular driver on the bus run on which Lusk had been employed, who had resigned from the Union because he was "scared", was not laid off but was paid for the days he was unemployed while awaiting assignment to a new run.

The Board's findings of fact are supported by substantial evidence on the record considered as a whole.

The petition for enforcement of the order of September 7, 1949 and the petition for enforcement of the order of September 28, 1950 are hereby granted.

Orders enforced.