NATIONAL LABOR RELATIONS BOARD
v. NEW YORK STATE LABOR
RELATIONS BOARD et al.

United States District Court
S. D. New York.

July 1, 1952.

George J. Bott, Gen. Counsel, Washington, D. C., by David P. Findling, A. Norman Somers, Norton J. Come, and Willis S. Ryza, Washington, D. C., for National Labor Relations Board.

Philip Feldblum, New York City, by Keith Lorenz, Richard J. Horrigan and Louis E. Goldstein, New York City, for New York State Labor Relations Board.

BONDY, District Judge.

This is a motion by the National Labor Relations Board for summary judgment in an action for an injunction to restrain defendant State Labor Relations Board and its members from proceeding further with respect to unfair labor practices charged against two New York City taxicab companies, Charman· Service Corp. and Taxi Transit Co., the National Board claiming that it has exclusive jurisdiction over them.

Judge Holtzoff denied a motion herein for a preliminary injunction to restrain the State Board, 99 F.Supp. 526.

One employee of Charman Service Corp. and five employees of Taxi Transit Co. filed with both boards charges of discriminatory discharge on account of union activities. The State Board conducted hearings in the Charman Service Corp. case and decided that it had jurisdiction and that an unfair labor practice had been committed in violation of N. Y. Labor Law Sec. 704(4), (5) and ordered reinstatement of the employee with back pay. The order was affirmed by the Supreme Court of the State of New York, County of New York, over the objections by the employer that the State Board was without jurisdiction. New York State Labor Relations Board v. Charman Service Corp., 201 Misc. 291, 107 N.Y.S.2d 41. The court held that the activities of Charman Service Corp. did not affect interstate commerce and that consequently the State Board, and not the National Board, had jurisdiction. An appeal to the Appellate Division of the Supreme Court of the State of New York is pending.

In the Taxi Transit Co. case, the State Board issued a complaint and the company filed an answer contesting the Board's jurisdiction. The State Board has expressed its intention to hold hearings to determine whether it has jurisdiction and, if so, to determine the merits of the claim.

The National Board has issued complaints in both cases, charging unfair labor practices in violation of 29 U.S.C.A. § 158(a) (1), (3). Since submission of this motion, hearings were held and intermediate reports, finding that the National Board has jurisdiction and that unfair labor practices had been committed, were issued by trial examiners, and in

752

the Charman Service Corp. case, the National Board has affirmed the trial examiner's decision and issued its order against the Charman Service Corp.

The issues involved on this motion are (1) whether this court has jurisdiction to consider the motion; and (2) if so, whether the motion should be granted.

Defendants contend that the National Board has not the power to bring any action not expressly authorized by the National Act and accordingly has not the power to bring this action against the State Board. The National Act only expressly authorizes the National Board to apply for the enforcement of its orders to the United States courts of appeals, 29 U.S.C.A. Sec. 160(e), and to apply to the district court for temporary injunctions restraining persons against whom a complaint has been issued charging unfair labor practices. 29 U.S.C.A. § 160(j) (1).

■ The power of an administrative agency to bring actions may be implied. See Bowles v. Willingham, 321 U.S. 503, 510–511, 522–524, 64 S.Ct. 641, 88 L.Ed. 892; Walling v. Brooklyn Braid Co., Inc., 2 Cir., 152 F.2d 938, 940–941. In Bowles v. Willingham, the Price Administrator, who had express authority only to apply to the courts to enjoin violations of price or rent regulations, Emergency Price Control Act of 1942, Sec. 205(a), 56 Stat. 23, 33, 50 U.S.C.A.Appendix, § 925(a), and to appear in the Emergency Court of Appeals on review of his regulations or orders and to petition the United States Supreme Court for a writ of certiorari to review decisions of the Emergency Court of Appeals, Sec. 204, 56 Stat. 31, 50 U.S.C.A.Appendix, § 224, was held to have the power to sue in the district court to enjoin a state court action on the ground that the exclusive remedial procedure provided by the federal act barred the state action.

■ The court is of the opinion that the National Board has implied authority to bring this action to protect its exclusive jurisdiction. See N. L. R. B. v. Killoren, 8 Cir., 122 F.2d 609, 137 A.L.R. 510, certiorari denied 314 U.S. 696, 62 S.Ct.

412, 86 L.Ed. 556; N. L. R. B. v. Sunshine Mining Co., 9 Cir., 125 F.2d 757.

■ This action does not involve an appeal from an order of the National Board. It is within the jurisdiction of this court as an action arising under an Act of Congress regulating commerce and protecting trade and commerce against restraints. 28 U.S.C.A. § 1337. See Food, Tobacco, Agricultural & Allied Workers Union v. Smiley, 3 Cir., 164 F.2d 922, 923; United Office and Professional Workers v. Smiley, D.C., 77 F.Supp. 659, 664; A.F. of L. v. Watson, 327 U.S. 582, 591, 66 S.Ct. 761, 90 L.Ed. 873.

■ Defendants contend that no injunction may issue with respect to the Charman Service Corp. because "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283. However, the purpose of this statute is to avoid friction between federal and state courts in litigation over which the two have concurrent jurisdiction. See Hale v. Bimco Trading Co., 306 U.S. 375, 378, 59 S.Ct. 526, 83 L.Ed. 771; United States v. McIntosh, D.C., 57 F.2d 573, 576–577. It does not prevent the federal courts from restraining interference by the state courts with jurisdiction vested exclusively in the federal courts, Bowles v. Willingham, supra, 321 U.S. at pages 510–511, 64 S.Ct. at page 645; N. L. R. B. v. Sunshine Mining Co., supra, 125 F.2d at page 762; United States v. McIntosh, supra, or in a federal agency. Brown v. Wright, 4 Cir., 137 F.2d 484, 488.

■ The jurisdiction of the National Board over the labor relations of enterprises whose activities affect interstate commerce is exclusive. La Crosse Tel. Corp. v. Wisconsin Employment Relations Board, 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463; Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; New York State Labor Relations Board v. Charman Service Corp., 201 Misc. 291, 107 N.Y.S.2d 41, 44; Ryan v. Simons, 302 N.Y. 742, 98

N.E.2d 707. In Davega-City Radio, Inc., v. Boland, D.C., 23 F.Supp. 969, relied on by defendant, an injunction against the State Board was denied by reason of 28 U.S.C.A. § 2283. However, that was decided when the jurisdiction of the State Board over enterprises affecting commerce was considered concurrent with that of the National Board in the absence of prior action by the National Board in the particular case. Matter of Davega-City Radio, Inc., v. State Labor Relations Board, 281 N.Y. 13, 24, 22 N.E.2d 145.

The State Board, and the National Board (since the submission of this motion) have formally decided that they have jurisdiction over Charman Service Corp.

Defendants contend that since neither the National Board nor the State Board has formally asserted jurisdiction over Taxi Transit Co., no justiciable controversy as to conflict of jurisdiction is presented as to it. The National Board contends that a conflict is presented by the State Board's intention to hold hearings as to whether it has jurisdiction and by the National Board's general assertion of jurisdiction over New York taxicab companies.

■ However, the intention of the State Board to determine whether it has jurisdiction does not present any threat to the jurisdiction of the National Board. No justiciable question as to conflict of jurisdiction is presented until the State Board threatens to proceed to determine the merits. Thus, La Crosse Tel. Corp. v. Wisconsin Employment Relations Board, supra, 336 U.S. at pages 25–26, 69 S.Ct. at pages 382–383, and Bethlehem Steel Co. v. New York State Labor Relations Board, supra, 330 U.S. at pages 775–776, 67 S.Ct. at page 1031, relied upon by plaintiff, indicate only that a justiciable controversy would be presented after the determination of a state board to conduct elections for the certification of a bargaining agent. Such was the situation in the cases in which state boards have been enjoined on the grounds of exclusive jurisdiction of the National Board. See N. L. R. B. v. Industrial Commission of Utah, D.C., 84 F.Supp. 593, affirmed 10 Cir., 172 F.2d 389; N. L. R. B. v. Industrial Commission of Utah, D.C., 84 F.Supp. 487;

United Office & Professional Workers v. Smiley, D.C., 77 F.Supp. 659; Linde Air Products Co. v. Johnson, D.C., 77 F.Supp. 656; Food, Tobacco, Agricultural & Allied Workers Union v. Smiley, D.C., 74 F.Supp. 823, affirmed 3 Cir., 164 F.2d 922.

■ Furthermore, the percentage of trips which Taxi Transit Co. makes to terminals of interstate carriers has not yet been determined. The National Board contends that the State Board has conceded that 6 per cent. is the average percentage of trips by New York City taxicabs to terminals of carriers in interstate commerce by stipulations entered into by the State Board and other companies that such was the percentage of trips made by them to terminals of interstate carriers. A partner in Taxi Transit Co. states in an affidavit that he believes the 6 per cent. is applicable to Taxi Transit Co. on the basis of surveys of similar companies and his experience in the industry. However, in view of the affidavit of Keith Lorenz, Chairman of the State Board, disputing the applicability of that percentage to Taxi Transit Co. and alleging that surveys of a comparable company disclosed that only 1.5 per cent. of its trips were to terminals of interstate carriers, there is insufficient proof that 6 per cent. of Taxi Transit's trips were to such points. Therefore it is not certain that the National Board will take jurisdiction of the Taxi Transit Co. on the ground that 6 per cent. of its taxicab service is to or from terminals of interstate and foreign commerce. No other standard applicable to Taxi Transit Co. has been established by the National Board and the National Act requires that the National Board, and not this court, should determine in the first instance whether the activities of an employer affect commerce. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48–51, 58 S.Ct. 459, 82 L.Ed. 638.

■ The court accordingly is of the opinion that no justiciable question is presented as to jurisdiction over the Taxi Transit Co.

Defendants contend that this motion must be heard and determined by a district court composed of three judges, pursuant to 28 U.S.C.A. § 2281. That statute requires a

three-judge court only when an injunction to restrain state action is sought on the grounds of the unconstitutionality of a state statute.

■ It is not claimed that the application of the New York State Labor Relations Act to the taxicab companies is unconstitutional. It is only claimed that this application of the State Act conflicts with the exclusive jurisdiction given by the National Act to the National Board over enterprises affecting commerce. See Linde Air Products Co. v. Johnson, supra 77 F. Supp. at page 658. Such conflict with a federal statute does not require a three-judge court. Case v. Bowles, 327 U.S. 92, 97, 66 S.Ct. 438, 90 L.Ed. 552; Board of Trade v. Illinois Commerce Commission, 7 Cir., 156 F.2d 33, 36, affirmed in part, reversed in part on other grounds, sub nom. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447; Rice v. Chicago Board of Trade, 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468; Farmers' Gin Co. v. Hayes, D.C., 54 F.Supp. 43, 46–47.

In none of the decisions which enjoined state boards on account of the exclusive jurisdiction of the National Board were three-judge courts convened. See N. L. R. B. v. Industrial Commission of Utah, supra; N. L. R. B. v. Industrial Commission of Utah, supra; United Office & Professional Workers v. Smiley, supra; Linde Air Products Co. v. Johnson, supra; Food, Tobacco, Agricultural & Allied Workers Union v. Smiley, supra.

■ The court therefore concludes that it has jurisdiction of the National Board's claim with respect to Charman Service Corp.

The National Board's power extends to all unfair labor practices "affecting commerce". 29 U.S.C.A. § 160(a).

Sec. 152(7), 29 U.S.C.A., provides: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." "Commerce" is defined as "trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country." 29 U.S.C.A. § 152(6).

■ In enacting this statute, Congress extended the regulatory power of the federal government over unfair labor practices as far as it could constitutionally be extended. Polish National Alliance v. N. L. R. B., 322 U.S. 643, 647–648, 64 S.Ct. 1196, 88 L.Ed. 1509; N. L. R. B. v. Fainblatt, 306 U.S. 601, 607, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 29–32, 57 S.Ct. 615, 81 L.Ed. 893. This federal power extends to employers whose activities when separately considered appear intrastate in character, provided that such activities bear a close and substantial relation to interstate commerce. See Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 222–223, 59 S.Ct. 206, 83 L.Ed. 126; Santa Cruz Fruit Packing Co. v. N. L. R. B., 303 U.S. 453, 466–467, 58 S.Ct. 656, 82 L.Ed. 954; N. L. R. B. v. Jones & Laughlin Steel Corp., supra, 301 U.S. at pages 37, 41, 57 S.Ct. at pages 624, 626. The National Act has thus been held to apply to employers whose activities involve the shipment of goods across state lines, N. L. R. B. v. Fainblatt, supra; Santa Cruz Fruit Packing Co. v. N. L. R. B., supra; N. L. R. B. v. Jones & Laughlin Steel Corp. supra, and to enterprises which, although wholly intrastate, provide services to channels of interstate commerce and to businesses engaged in interstate commerce. Consolidated Edison Co. v. N. L. R. B., supra, 305 U.S. at pages 220–221, 59 S.Ct. at pages 212–213; N. L. R. B. v. Gulf Public Service Co., 5 Cir., 116 F.2d 852; Butler Bros. v. N. L. R. B., 7 Cir., 134 F.2d 981, 983–984; see Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 391–392, note 13, 71 S.Ct. 359, 95 L.Ed.

364. Accordingly, some local transportation systems, wholly intrastate, have been held to affect commerce and to be within the jurisdiction of the National Board. N. L. R. B. v. Fort Worth Transit Co., 5 Cir., 187 F.2d 792; N. L. R. B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, certiorari denied 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084.

The Supreme Court has decided that the National Act applies to employers whose activities involve the shipment of goods across state lines no matter how small the volume of commerce which was affected by such shipments, so long as it was "more than that to which courts would apply the maxim *de minimis.*" N. L. R. B. v. Fainblatt, supra, 306 U.S. at page 607, 59 S.Ct. at page 672; N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284; see N. L. R. B. v. Townsend, 9 Cir., 185 F. 2d 378, 382.

The Court of Appeals for the Fifth Circuit, following the Denver Building & Construction Trades Council case, held subject to the National Act as "affecting commerce" a bus line which operated eight or nine buses on scheduled intrastate runs between El Paso and Ysleta, Texas, a distance of twelve miles, on the ground that the effect of its operations on interstate commerce was greater than *de minimis.* N. L. R. B. v. El Paso-Ysleta Bus Line, Inc., 190 F.2d 261.

However, these buses on their regular scheduled route supplied service to employees of several large industrial corporations engaged in interstate commerce. One such company paid to the bus company the cost of transportation of its employees. The buses also left the highway and entered the premises of another such company to pick up and discharge the latter's employees.

Public transit systems, such as bus and trolley lines, are distinguishable from taxicab companies because the regularity of their service to employees of industrial enterprises engaged in interstate commerce puts them in the category of "public utility". See Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, supra, 340 U.S. at page 391, 71 S.Ct. at page 363; Local Transit Lines, 91 N.L.R.B. 623, 624. This distinction was recognized by the National Board when it declined jurisdiction over Los Angeles taxicabs, it being noted that the Board's assertion of jurisdiction over local bus and trolley systems was based primarily on the indispensability of such transit systems to the industrial life of communities receiving and producing goods in interstate commerce. Yellow Cab Company of California, 90 N.L.R.B. 1884, 1889.

█ Moreover, the Supreme Court has not decided that the National Board has jurisdiction when the effect on interstate commerce of businesses which provide only intrastate services is greater than *de minimis,* and not substantial and direct. The Fainblatt and Denver Building & Construction Trades Council cases, supra, involved only enterprises which transported goods across state lines. To extend the rule so that any effect on interstate commerce greater than the trifling amount that the court would disregard gives jurisdiction to the National Board over enterprises providing only intrastate services would leave almost nothing in the field of labor relations to state supervision. Such an extension is not suggested in those decisions. The court is of the opinion that enterprises which provide only intrastate services must have a substantial effect upon interstate commerce to be within the jurisdiction of the National Board. See Southern Colorado Power Co. v. N. L. R. B., 10 Cir., 111 F.2d 539, 542.

The Charman Service Corp. operates ten taxicabs and employs thirty drivers and has an annual gross revenue of about $140,000. The company purchases for its own use taxicabs, gasoline, oil and automotive parts and rents tires, in the amount of about $50,000 a year, all of which originate outside the state, but are purchased from dealers in New York. The amount of such purchases are far below the minimum established by the National Board as a standard for its assertion of jurisdiction on the basis of the purchase of goods originating outside the state. See Federal Dairy Co.,

Inc., 91 N.L.R.B. 638; Dorn's House of Miracles, Inc., 91 N.L.R.B. 632.

Plaintiff relics primarily on the extent to which Charman Service Corp. transports persons to and from points of ingress to and egress from New York State, i. e. terminals of water, land and air carriers which are instrumentalities of interstate and foreign commerce. In the Skyview Transportation Co. case, 92 N.L.R.B. 1664, the National Board established the policy that it would take jurisdiction over New York taxicab companies where 6 per cent. of the trips made by the taxicabs were to or from terminals of carriers in interstate and foreign commerce.

An analysis made in the State Board's proceedings of the trip cards of the Charman Service Corp. for seven days in 1949 disclosed that 6 per cent. of the total 3,723 trips were clearly designated on the trip cards as to or from terminals of interstate and foreign carriers. Besides, there were several hundred trips to the street corners at which the terminals are located and there were more than one hundred trips which were not recorded or the records of which were illegible. Some of these may have been to or from the terminals.

However, there is no proof as to how many of the passengers carried by Charman to or from the terminals were actually arriving or leaving in interstate or foreign commerce. Many of them may have been going to greet travelers. Many intra-state passengers arrive at and depart from the railroad and bus terminals, including large numbers of daily commuters. There are also nearby buildings and shops to or from which the taxicab passengers may have been traveling. The 6 per cent. figure, therefore does not establish the percentage of persons transported by Charman who were actually departing upon or arriving after interstate or foreign journeys. The actual percentage may, as the State Board contends, be considerably less than 6 per cent.

Plaintiff urges that the court should consider the relation of the New York City taxicab industry as a whole to interstate commerce.

There are approximately 11,500 taxicabs operating in New York City, of which approximately 5,000 are individually owned and operated. The remaining 6,500 are operated in fleets of two or more taxicabs, the largest of which consists of 1,200 cabs. It appears that there are between 2,000–2,200 calls daily at Grand Central Terminal by taxicabs, 2,600–2,800 daily at Pennsylvania Station. A 1947 survey showed that 26.6 per cent. of all passengers at La Guardia Airport used taxicabs. There are, during ten hours of the day, ordinarily 25 cabs on line at La Guardia Airport, from 12 to 15 cabs on line at Idlewild Airport, and, during morning rush hours, from 15 to 18 at the New Jersey Central Railroad Terminal in New York. For the period April 10 to May 20, 1949, during which 33,167 passengers arrived on ships at New York piers, there were 12,990 taxicab calls at the piers.

The courts have stated that it is appropriate to consider the fact that a particular employer may be representative of others, and that the aggregate of the activities of numerous, similarly situated, independent employers may have a substantial effect on interstate commerce and subject them to federal regulation. See Polish National Alliance v. N. L. R. B., supra, 322 U.S. at page 648, 64 S.Ct. at page 1199; N. L. R. B. v. Denver Building & Construction Trades Council, supra, 341 U.S. at page 685, note 14, 71 S.Ct. at page 949; N. L. R. B. v. Townsend, supra, 185 F.2d at page 382. However, the cases in which an industry as a whole was considered to affect interstate commerce were cases where the individual employer's business involved shipments across state lines.

In such cases, the substantial amount of shipments across state lines by a whole industry composed of small units provides a sound basis for sustaining federal jurisdiction over an individual employer in the industry, although his shipments across state lines are small and insubstantial. See N. L. R. B. v. Fainblatt, supra, 306 U.S. at pages 607–608, 59 S.Ct. at page 672. These authorities do not apply to employers whose activities provide only local services.

Furthermore, except for the 1947 La Guardia Airport survey, none of the statistics submitted for the New York City taxicab industry establishes the extent of the use of taxicab service by travelers in interstate or foreign commerce. None of the records shows the proportion of the New York taxicab business involved in the transportation of persons to or from terminals for travel in interstate and foreign commerce.

Evidence was presented at the State Board's hearings to show that a city-wide strike of taxicab drivers in New York in April, 1949 did not decrease travel on carriers in interstate or foreign commerce. Although there were competing facilities which may have been substituted for taxicabs, this is immaterial to the issue of the National Board's jurisdiction. See N. L. R. B. v. Bradford Dyeing Association, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L.Ed. 1226; N. L. R. B. v. Mid-Co Gasoline Co., 5 Cir., 183 F.2d 451, 453. It, however, may be some indication that taxicab service to and from the terminals is merely incidental to interstate and foreign commerce and that the New York City taxicab industry is essentially local in nature.

By local regulation, New York City taxicabs are required to accept all but drunkards and disorderly persons as passengers and to take them wherever they desire to go within the City of New York. Neither Charman Service Corp. nor Taxi Transit Co. has any special arrangements with any of the interstate or foreign carriers. The taxicab trips to terminals of interstate and foreign carriers are from the point of view of the taxicab drivers indistinguishable from other local trips. See United States v. Yellow Cab Co., 332 U.S. 218, 232, 67 S.Ct. 1560, 91 L.Ed. 2010.

Defendants contend that the Yellow Cab case conclusively establishes that local taxicab service is outside the reach of the National Act. In that case, the United States Supreme Court affirmed the dismissal of a cause of action under the Sherman Act, 15 U.S.C.A. §§ 1–7, which alleged a conspiracy to monopolize and restrict competition in local taxicab service in Chicago. The court said that while local taxicabs did transport passengers to and from railroad terminals, this was merely part of their local service, and "their relationship to interstate transit is only casual and incidental" since interstate rail journeys begin and end at the terminals and there was no special arrangement between the carriers and the local taxicab companies. The court held that the activities of the taxicab companies were "too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act." Id., 332 U.S. at pages 230–231, 67 S.Ct. at page 1567. It however stated that some conspiracies among local taxicab companies might be so related to interstate commerce as to be subject to the Sherman Act, Id. 332 U.S. at pages 232–233, 67 S.Ct. at pages 1567, 1568.

The Yellow Cab case indicates that local taxicab service is not part of interstate commerce, and that therefore a complaint charging a conspiracy to monopolize local taxicab service does not state a claim for violation of the Sherman Act unless it is alleged that such restraint has the effect of monopolizing or restraining interstate commerce, as was done in Eastman v. Yellow Cab Co., 7 Cir., 173 F.2d 874, 876, 879–880. Accordingly the Yellow Cab case does not as a matter of law place local taxicab service beyond the reach of federal power under all circumstances. Jurisdiction would depend upon the activities of the employer involved in each case and their relation to commerce.

Charman Service Corp. is within the jurisdiction of the National Board if its activities substantially affect commerce within the meaning of the National Act. In the instant case, the employer's activities are such that a close question is presented as to whether or not their effect upon commerce is close and substantial. The court is of the opinion that the record does not clearly establish the facts as to the relation of the activities of Charman Service Corp. to commerce and that since an issue of fact is presented, the action should proceed to trial and not be disposed of summarily. See Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394.

The motion for summary judgment against the State Board and its members with respect to the Charman Service Corp. accordingly is denied and the claim against the State Board and its members involving the Taxi Transit Co. is dismissed on account of the lack of a justiciable controversy.