NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DALLAS CITY PACKING COMPANY, Respondent.

No. 15677.

United States Court of Appeals Fifth Circuit.

Feb. 29, 1956.

Borah, Circuit Judge, dissented.

Norton J. Come, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Arnold Ordman, Morris A. Solomon, Attys., N. L. R. B., Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, Tex., for respondent.

Before BORAH and JONES, Circuit Judges, and DAWKINS, Sr., District Judge.

JONES, Circuit Judge.

Two questions are presented by this proceeding for enforcement of an order of the National Labor Relations Board directing the respondent, Dallas City Packing Company, to bargain collectively with a union which had been certified by the Board as the bargaining representative of employees. One of these questions arises from a challenge to the Board's jurisdiction, the respondent claiming it is not doing business in interstate commerce. The other question is whether the respondent's request for a formal hearing on its objections to the conduct of the election of the Union as a bargaining representative should have been granted by the Board.

The respondent is a partnership composed of Milton Rubin, Rose Rubin, Herman Waldman, and Bernice Rubin Waldman. It operates a meat packing and processing business in Dallas, Texas. It buys all of its live stock in Texas. During the year 1954, the year with which we are here concerned, the respondent bought $4,200,000 of live stock, all of which was purchased in Texas. Spices and supplies were bought outside Texas for which about $18,000 was paid. Meat and meat products and by-products were sold entirely in Texas, the amount of the sales being approximately $5,000,000. The respondent sold hides to purchasers doing business out of Texas for about $200,000.

Cattle are slaughtered on a killing floor where the hide is removed from the animal by four of respondent's employees. The hide drops to the floor. The employees who are engaged in the meat processing and packing operations have no more to do with the hides. The respondent has one employee whose activities are primarily if not wholly devoted to handling of the hides. His job is to

remove them from the killing floor to a separate building, called the hide cellar, across a road from the packing plant. In the hide cellar the hides are salted, cured and tied into bundles. When a carload of hides has accumulated, the hides are weighed by the killing foreman, loaded by itinerant labor gangs, and shipped. The respondent contends that jurisdiction over all of its employees cannot be secured merely because four per cent. of its sales volume, arising from the sale of a by-product, is in interstate commerce. The Board does not rely upon the purchases of spices in interstate commerce as conferring jurisdiction. We shall not further advert to it.

The Union (Local 528, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL) petitioned the Board for certification as bargaining representative of the respondent under Section 9(c) of the National Labor Relations Act, 29 U.S.C.A. § 159(c). The Board, rejecting respondent's objections to its jurisdiction, ordered an election. On the day prior to the election the employees received from the respondent a letter or bulletin. On the day of the election Union representative distributed at the gate of respondent's plant a mimeographed sheet or pamphlet entitled "Our Answer Herman [Herman Waldman] And Mickey [Milton Rubin]". It referred to the respondent's message to employees as "a slick, underhanded, method of intimidating you and your family". In this pamphlet the Union asserted that respondent had been underpaying employees as much as ninety cents an hour for years, that employees were underpaid $31.30 each week. In this pamphlet the Union commented on the respondent's Christmas bonus or proposed Christmas bonus by saying "What you two boys should do at Xmastime is buy yourself a gun. At least Jesse James used a gun when he committed highway robbery". A pistol and a hand holding it are depicted at the margin of the language last quoted.

The election was held. At the polling place within the plant as observer for the Union was stationed respondent's employee Diamond Watson. Of the 67 employees eligible to vote, 66 participated. The tally showed 34 votes for the Union, 31 votes against the Union, and 1 ballot challenged. The respondent objected to the conduct of the election and charged that the passing out of the Union pamphlet was unlawful electioneering and an interference with the free choice of the employees, that the closeness of the vote raised a presumption that the distribution of the pamphlet affected the election, and that subsequent to the election it had learned that Diamond Watson was an organizer of the Union and an instigator of Union activities, whose presence constituted interference, restraint and coercion. By the objections it was prayed that the Union not be certified as the employees' bargaining agent. The Regional Director of the Board reported on the respondent's objections, finding that the Union's pamphlet was not interference, that the evidence did not establish that Diamond Watson was an officer of the Union but that he was an employee. The respondent objected to the report, and in some detail related the taking of the Union pamphlets into the plant and the discussions with respect to them in the plant by the employees. The Board overruled the objections and certified the Union as the bargaining representative. A motion for rehearing was made by the respondent and denied by the Board. The respondent refused to bargain with the Union, the Union filed its complaint with the Board, a hearing was had before a Board Examiner who, in an intermediate report, refused to consider the question of the validity of the election, feeling himself bound by the Board's certification. Exceptions to the report were taken by the respondent on the grounds previously asserted. The Board entered its order directing the respondent to cease and desist from refusing to bargain with the Union and interfering

with the Union's bargaining efforts. The respondent was directed to bargain with the Union, post the notice of Union recognition and advise the Regional Director of compliance. The respondent filed with the Board its motion for rehearing and exceptions which were denied. The proceeding is before us on a petition for enforcement of the Board's order.

■ The Board had jurisdiction. It is so well known that the use and disposition of by-products, including hides, is an integral part of the meat packing and processing business that such fact need not be proved. Although the amount in dollar volume received from the sale of hides is not a large percentage of total sales, yet it is substantial. Congress did not make jurisdiction dependent upon any volume of commerce affected as long as it is in an amount sufficient to avoid the operation of the *de minimis* rule. National Labor Relations Board v. Vulcan Forging Co., 6 Cir., 1951, 188 F.2d 927. Analogous are the holdings of this court in National Labor Relations Board v. Gulf Public Service Co., 5 Cir., 1941, 116 F.2d 852, and National Labor Relations Board v. Mid-Co. Gasoline Co., 5 Cir., 1950, 183 F.2d 451. We are not persuaded that the stripping, curing and sale of the hides should be disregarded by reason of only one full-time employee devoting all of his time to the removal and curing of the hides.

■ In National Labor Relations Board v. Trinity Steel Co., 5 Cir., 1954, 214 F.2d 120, an election was held where 39 votes were cast for union representation and 18 against it. There as here the employer filed Objections to the Conduct of the Election and Conduct Affecting the Results of the Election on the principal ground that the Union interfered with the employee's free choice by making misrepresentations and promises. The objections, there as here, were overruled by the Regional Director and his action was sustained by the Board, followed by a certification of the Union as the bargaining representative. In the Trinity Steel Company case a union representative had made misrepresentations to employees regarding the employer's efforts to get Wage Stabilization Board approval of wage increases. The court held this, coupled with promises that the Union would procure increased wages, required that the election be set aside. In the case before us the Regional Director found and the Board agreed that the distribution of the pamphlets at the gate of the respondent's plant five hours before the election did not constitute union interference with the free choice by the employees of a bargaining agent. However, the respondent charged and was never given an opportunity to prove that these pamphlets were intended by the Union to be taken into the plant and in fact were taken into the plant, were found in the dressing room, and were much discussed off and on during the day. The question of whether or not the distribution of the pamphlets, followed by the happenings within the plant, constituted an interference with a free election involves something more than the five hours of time between distribution at or near respondent's gate and balloting.

There is the charge by respondent, upon which it has had no opportunity to make proof, that the Union watcher at the polling place, Diamond Watson, was a union organizer and instigator who had threatened some of the employees and these facts were unknown to the respondent at the time of the election. The Regional Director found that because it was not shown that Watson was a Union official and at the time of the election he appeared to be an employee of the respondent and an eligible voter, and cast a ballot as such without objection or challenge, the respondent's objection was without merit. We think the opportunity to make proof should have been given. If the respondent's charges are well founded and the employees were not free from Union interference or coercion, the certification should be set aside. This

is a matter for initial determination by the Board.

The case is remanded to the Board for the taking of such admissible testimony as may be relevant to a determination of whether the validity of the election may have been affected by unlawful Union interference or coercion by the distribution of the pamphlet or the activities of Diamond Watson as a Union representative. The Board will thereafter make a further order incorporating its findings and conclusions, pending which the petition for enforcement is

Denied.

BORAH, Circuit Judge, dissents.