NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The LORD BALTIMORE PRESS, INC., Respondent.

No. 8416.

United States Court of Appeals Fourth Circuit.

Argued Jan. 5, 1962.

Decided March 19, 1962.

**672**

Glen M. Bendixsen, Attorney, National Labor Relations Board (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., Attorney, National Labor Relations Board, on the brief), for petitioner.

Earle K. Shawe, Baltimore, Md. (Sidney J. Barban, William J. Rosenthal, and Larry M. Wolf, Baltimore, Md., on the brief), for respondent.

Before SOPER, BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

The order of the National Labor Relations Board [1] requiring The Lord Baltimore Press to bargain with Amalgamated Lithographers of America is here resisted, fundamentally, upon the assertion that the election favoring the union as the collective bargaining representative of Baltimore's employees was un-

fairly conducted. The immediate challenge is to the Board's refusal to accord Baltimore a hearing on its exceptions to the election.

We stay the order's enforcement because of the Board's denial of the hearing.[2] The election's validity is thus made a premature question, to await the outcome of the further proceedings we order.

On May 8, 1959 Baltimore consented to an election, under the supervision of the Board's Regional Director, to ascertain whether a certain unit of its employees desired Amalgamated as its bargaining representative.[3] The election was held June 11, 1959 and the union won. Next day Baltimore filed objections to the election, at the same time asking that it be set aside. Presently pertinent, the objections stated that:

"(1) During the period immediately prior to the election Employer supervisory personnel engaged in organizing and other activities on behalf of the Union, by which employees were induced, coerced and caused to favor the Union, sign cards for the Union and vote for the Union, all of which was unknown to the Employer until after the election."

The supervisory personnel to which Baltimore had reference was one Creston E. Ford, the foreman of its lithographic department. Following an ex parte investigation, including in camera interviews with the witnesses of whom it was apprised by the employer, the Regional Director concluded that the objections should be overruled and Amalgamated certified as the exclusive representative of the Baltimore employees. To this report Baltimore filed exceptions. The Board denied them without a hearing, thinking a hearing unwarranted and unsought, and accordingly certified Amalgamated.

1. National Labor Relations Act, § 10(c), 29 U.S.C.A. § 160(c).

2. Id., § 10(e), 29 U.S.C.A. § 160(e).

3. Id., § 9(c) (1) and (2), 29 U.S.C.A. § 159(c) (1) and (2).

Thereafter, Baltimore declined to bargain with the union, contending that its selection as the collective agent was invalid. At the union's instance the Board issued a complaint accusing Baltimore of an unfair labor practice as defined in § 8(a) (5) and (1) of the Act, 29 U.S. C.A. § 158(a) (5), (1). In the hearing on this complaint before the Examiner, Baltimore proffered oral and documentary evidence purporting to delineate the activities of Ford. Quoting from the offer made before the Examiner, the evidence it tendered would show that

"He [Ford] said that he knew the company had done and would do some dirty tricks to us and told them to look at what they have done to me. Further, that Mr. Ford told employees under his supervision 'you fellows better sign a card and send them in' under circumstances in which it was perfectly clear that he was talking about union cards which were the only cards being circulated in the plant at the time.

"Further, that Mr. Ford told witnesses under his supervision that the plant superintendent was just a hatchet man and the men had better get together and get the union in.

"Further, that many times and immediately before the election Mr. Ford stated to employees under his supervision that the plant wasn't a family affair any longer, that the men didn't any longer have the security they had before and that the fellows ought to have a union to protect themselves."

This evidence the Examiner declined to hear. He was of the opinion that as the Board had already decided the dispute in the representation proceeding, the question was no longer open. Whereupon on his recommendation the Board entered the order it now seeks to enforce.

With the respondent Baltimore, we think it should have been heard on its exceptions in the election proceeding. Indwelling, of course, was a request for a hearing upon them. The Board's Rules and Regulations, Section 102.69, allowed

such a hearing. But we need not now enlarge on the point because, in the absence of a hearing at that stage, the employer should certainly have been accorded a hearing thereon in the complaint proceedings, and we discuss the point under that head.

■ The Examiner and the Board clearly erred in rejecting the testimony when last offered. Ford's activities—if true—could not be lightly brushed off. The Board has repeatedly declared, and again recognizes in its brief here, that advocacy of the union by a supervisor-employee, unknown to the employer, is cause for annulment of the election. Shovel Supply Co., 118 N.L.R.B. 315 (1957); Parkchester Machine Corp., 72 N.L.R.B. 1410 (1947); Robbins Tire & Rubber Co., 72 N.L.R.B. 157 (1947). Awareness by Baltimore of Ford's aiding of the union is not indicated in the evidence. Entreaties and importunities of the kind here suggested were not permissible and protected—"privileged"—under 8(c) of the Act, 29 U.S.C. 158(c) as expressing only " * * * views, argument, or opinion * * * ". Nor would they necessarily be neutralized by the alleged oral and written attempts of Baltimore to persuade the employees against unionization. It must be remembered that Ford denied any untoward conduct on his part. Whatever the truth the employer should have had an opportunity to present its side.

Baltimore's strictures on the supervisor's electioneering, given increased countenance by a show of proof, raised "substantial and material factual issues". Rules and Regulations, supra, Sec. 102.69(d). Actually, the report of the Regional Director in the election proceeding itself reflects evidence of partisan remarks by Ford, particularly "that he [Ford] knew that the Company had done some dirty tricks to us, 'look what they done to me'" and "the plant superintendent was just a hatchet man".

Such words would come with particular force from Ford. He had once been a superintendent and only recently demoted. His admonitions were directed

to subordinates and he talked from 37 years of experience with Baltimore. Just then the company was in a critical period, passing from a family proprietorship of 80 years to a new ownership, a transition already creative of uneasiness among the employees. Though away on vacation from May 30 until June 9 (two days before the election), it is not clear that Ford's absence erased his earlier campaigning.

The right of the employer to the audience of the Board in these circumstances was enjoined upon the Board in N. L. R. B. v. Poinsett Lumber & Mfg. Co., 221 F.2d 121 (4 Cir. 1955) by this court with precise language, as follows:

"If a hearing had been held and the evidence had been taken and passed upon by the Board in the representation proceeding, the Board would not be required to go into the matter again in the absence of special circumstances showing that it was in the interest of justice that this be done; but the evidence has not been taken nor a hearing accorded the company at any time even though substantial questions affecting the validity of the election had unquestionably been raised by its exceptions. We think that it is entitled to a hearing at some stage of the proceedings so that it may produce the evidence upon which it relies for consideration by the Board and for consideration by this court in proceedings to enforce or set aside the Board's order. * * *"

Similar holdings prevail elsewhere. N. L. R. B. v. Tampa Crown Distributors Inc., 272 F.2d 470 (5 Cir. 1959); N. L. R. B. v. Dallas City Packing Co., 230 F. 2d 708 (5 Cir. 1956); N. L. R. B. v. West Texas Utilities Co., 214 F.2d 732 (5 Cir. 1954).

 Certification of the election did not irrevocably seal it against review. Altogether interlocutory—just a step in the enforcement proceeding—it was as a matter of law subject to vacation or revision at any time before the trial of the unfair labor practice complaint became final. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941).

The order of the Board will be set aside with a direction to hear Baltimore's evidence and arguments in objection to the election.

Order set aside and remanded.