**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOUGLAS COUNTY ELECTRIC MEMBERSHIP CORPORATION,**
Respondent.

No. 22484.

United States Court of Appeals
Fifth Circuit.

March 22, 1966.

126

Gary Green, Atty., N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott C. Lichtman, Atty., N. L. R. B., Washington, D. C., for petitioner.

Alexander E. Wilson, Jr., Alexander E. Wilson, III, Atlanta, Ga., Robert J. Noland, Douglasville, Ga., Wilson, Branch, Barwick & Vandiver, Atlanta, Ga., for respondent.

Before BROWN and COLEMAN, Circuit Judges, and GARZA, District Judge.

JOHN R. BROWN, Circuit Judge:

Another of a growing list[1] of cases where the § 8(a) (5) failure to bargain is the vehicle for testing the validity of an RC Representation Proceeding, this one presents two questions. One is the substantive problem of the Employer's right to challenge an election because of known, but unauthorized pre-election pro-union campaigning by supervisors. The other, more troublesome, is a procedural one relating to the sufficiency of the Employer's opportunity to be heard either in the RC proceeding, the § 10(b) unfair labor proceedings, or both. We enforce.

In summarizing the setting, we draw freely on the Board's brief except as to those few matters questioned by the Employer.[2]

On May 13, 1963, the Union[3] filed a petition for election with the Board. Thereafter the Employer filed a motion to dismiss the petition alleging that "the proposed bargaining unit * * * was conceived, fostered and organized by [five men characterized as] supervisory personnel employed by the Employer * * *." A hearing was held, and on June 20, the Regional Director issued a Decision and Direction of Election, rejecting the Employer's claim that the five foremen, the alleged organizers of the Union, were supervisors within the meaning of the Act.

The election was scheduled for July 19. A notice sent by the Employer to all employees announced the details of the election and emphasized management's strong opposition to the Union. At the election, however, the employees voted in favor of the Union. The Employer challenged the ballots cast by the five foremen, but since 15 of the 16 unchallenged ballots were for the Union, the challenged ballots could not affect the results of the election.

Several days after the election, the Employer filed objections, repeating the allegation that the Union campaign was "conceived, instigated, conducted and * * * furthered by the said five supervisors * * *." Permitting these five men to vote, the Employer asserted, had created an "atmosphere of domination and coercion" and had "prevented a fair election." The Regional Director undertook to investigate[4] the issues raised by the objections, overruled the objections, and certified the Union on August 9 as the exclusive representative of the employees. In overruling the objections, the Regional Director noted that the Employer had been permitted to challenge the ballots cast by the five alleged supervisors and that their votes had not been counted. Further, he ruled, the mere act of voting by a supervisor, without further incident, is not a basis for setting aside an election.

On August 19, the Employer requested Board review of these determinations by the Regional Director, reiterating that "the election was rendered invalid by the atmosphere of supervisory coercion." On September 30, the Board denied the Employer's Request for Review, ruling that "no substantial issues warranting review" had been raised.

Meanwhile, however, the Employer had taken steps to alter the Regional Director's determination of June 20 that the five foremen were not supervisors. Thus, on July 15, four days before the election, the Employer had presented to each employee a written memorandum

---

1. See NLRB v. Air Control Prods., Inc., 5 Cir., 1964, 335 F.2d 245, and especially 335 F.2d at 247 n. 1.

2. Douglas County Electric Membership Corporation. It is a co-op engaged in distribution and sale of electric power.

3. International Brotherhood of Electrical Workers, AFL–CIO.

4. The Employer here asserts that there was no investigation and, worse, it was denied the opportunity of proving so.

whose stated purpose was "to spell out in no uncertain terms that * * * [foremen] are supervisors in every sense of the word." In this memorandum, the Employer authorized the five men to exercise various specified supervisory functions. At the same time, the Employer filed with the Regional Director a motion to reopen the record "in order that the appropriate unit in this case may be amended" by excluding the five foremen. Over the Union's objection, the Regional Director reopened the record to take evidence "with respect to the authority conferred upon the foremen on July 15, 1963, or thereafter * * *. Such action does not constitute a reconsideration of the [Regional Director's] Decision * * on June 20, 1963, but has the sole purpose of determining whether the foremen are now supervisors within the statutory meaning and, if so, of appropriately amending the description of the bargaining unit * * *." 5

After notice and hearing, the Regional Director issued a Second Supplemental Decision and Order, dated September 25, in which he concluded that the Employer's July 15 memorandum had effectively given supervisory authority to the five foremen. Accordingly, he amended the bargaining unit to exclude the foremen in accordance with the Employer's request.

Thereupon, the Employer filed a motion with the Board requesting reconsideration of the Board's September 30 refusal to review the Regional Director's August 9 determination not to set aside the election. Since the five men were now established to have been supervisors at the time of the election, the Employer asserted, their mere participation in the election constituted undue influence over the employees.[6] The Board denied this motion.

As already noted, the representation election had resulted in the Union's certification on August 9. Thereupon, the Union repeatedly requested the Employer to meet for the purpose of collective bargaining. The Employer refused, asserting that the Union's certification was invalid because of the activities of the five foremen.

Upon charges filed by the Union, a complaint issued against the Employer. At the unfair labor practice hearing, the Employer sought to defend primarily on the grounds that the participation of the five foremen in the Union's organizing campaign invalidated the election. The Trial Examiner declined to admit proffered testimony to show the activities of these five men, however, on the grounds that this defense had already been "sufficiently and properly litigated in the representation case." The Board affirmed the Trial Examiner's rulings, found that the Company's refusal to bargain violated § 8(a) (5) and (1) of the Act, and ordered the Employer to cease and desist, and bargain collectively with the Union upon request.

■ On the surface there does appear to have been no real hearing at any stage on the Employer's contention of supervisor pro-union campaigning. Thus, at the time of the Regional Director's decision of August 9 overruling the Employer's objections on this ground, the Director was in effect still adhering to the earlier determination that the line foremen were not supervisors. If, as held, they were not supervisors, their pro-union organizational activities were legally irrelevant. Nor was this really changed by the reopening (also by an order of August 9) of the question of supervisory status in the light of the July 15 memorandum outlining duties. For the Employer's July 16 motion sought

5. The Employer did not object to the limited scope of this reopened hearing.

6. As pointed out by note 1 of the Regional Director's order of August 9 overruling the Employer's objection to the election, the Employer did not submit with its objections any evidence of organizing activity or pro-union electioneering by the five foremen after July 15. Nor was such evidence proffered with the motion seeking Board reconsideration. Such evidence was, however, proffered in the § 8(a) (5) unfair labor practice hearing.

only "to reopen the record * * * in order that the appropriate unit in this case may be amended to conform to the * * * Act." Reciting this express purpose, the reopening order prescribed that the "further hearing" was "with respect to the authority conferred upon the foremen on July 15, 1963, or thereafter," but without re-examining the former decision on status.[7] And in the administrative hearing of August 20, the Hearing Officer carefully confined the scope of the evidentiary hearing to that issue.[8] The Regional Director's favorable ruling of September 25 was similarly restricted.[9]

Of course at that stage the Employer formally sought reconsideration by the Board of its September 30 denial of review of the August 9 order. It urged that the Regional Director's September order (note 9, supra) created a substantial issue of the correctness of that order which rejected the claim of supervisory pro-union campaigning. But again with no evidential hearing, the Board denied the motion by telegraphic order.

But the surface is seldom the stopping place and certainly not here. A more penetrating examination in light of the procedural and substantive principles discussed at length in NLRB v. Air Control Prods., Inc., 5 Cir., 1964, 335 F.2d 245, demonstrates that there has been a departure from neither.

■■ One thing seems clear. The objector is not entitled to offer in the unfair labor charge case evidence relating to the matters involved in the RC proceeding unless it demonstrates that there was no opportunity afforded in the RC proceedings or that extraordinary circumstances, e. g., genuine newly discovered evidence, excuse the failure to offer.[10] Although we assume that under § 102.69 (a) [11] of the Board's Rules, the written objection to an election need only "contain a short statement of the reasons therefor" without setting forth the supporting facts in detail, the objector's task does not end there. Rather, as we have pointedly held, the "objecting party must supply the Board with *specific evidence* which prima facie would warrant setting aside the election." NLRB v. O. K. Van Storage, Inc., 5 Cir., 1961, supra, 297 F. 2d at 75. (Emphasis added.)

7. To the quoted excerpt from the order was appended footnote 2:

"2. Such action does not constitute a reconsideration of the Decision and Direction of Election issued on June 20, 1963, but has the sole purpose of determining whether the foremen are now supervisors within the statutory meaning and, if so, of appropriately amending the description of the bargaining unit heretofore found to be appropriate."

8. At the opening he stated: "The sole purpose of this hearing is to determine whether the aforesaid employees are now supervisors within the statutory meaning of the Act."

9. Finding that "on and after July 15, 1963, the foremen were supervisors- as defined in the Act, I shall, therefore, amend the unit finding in accordance with the Employer's request."

It was formally "ORDERED that the Decision and Direction of Election * * * be * * * amended to exclude the foremen from the unit found to be appropriate for purposes of collective bargaining."

10. See, e. g., Pittsburgh Plate Glass Co. v. NLRB, 1941, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Rockwell Mfg. Co., Kearney Div. v. NLRB, 7 Cir., 1964, 330 F.2d 795, cert. denied, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94; NLRB v. Moss Amber Mfg. Co., 9 Cir., 1959, 264 F.2d 107; NLRB v. Southern Bleachery & Print Works, Inc., 4 Cir., 1958, 257 F.2d 235, cert. denied, 359 U.S. 911, 79 S.Ct. 588, 3 L.Ed.2d 575; and the many others discussed in NLRB v. Air Control Prods., Inc., supra. The Employer presses the cases of NLRB v. Poinsett Lumber & Mfg. Co., 4 Cir., 1955, 221 F.2d 121; NLRB v. O. K. Van Storage, Inc., 5 Cir., 1961, 297 F.2d 74; NLRB v. Joclin Mfg. Co., 2 Cir., 1963, 314 F.2d 627; NLRB v. Dallas City Packing Co., 5 Cir., 1956, 230 F.2d 708. But these are not to the contrary. It is not at all certain that we would go as far as some parts of the 10th Circuit's decision might seem to go in NLRB v. Ideal Laundry & Dry Cleaning Co., 10 Cir., 1964, 330 F.2d 712.

11. 29 CFR § 102.69(a).

Here, to be sure, the Employer repeatedly voiced vigorous objection to this pre-election, unauthorized, pro-union campaigning by its line foremen. This was carried forward in the formal Objection to Election, filed July 25.[12] But neither then nor in connection with its post-September 25 motion to the Board did the Employer furnish to the Regional Director or any of his staff either orally or in writing any information which remotely resembled specific evidence of specific events from or about specific people relating either to pre- or post-July 15 activity. (See note 6, supra.) From the proffer rejected at the unfair labor practice hearing, we may assume, of course, that the Regional Director and his staff never even contacted any or all of the five foremen. But at that stage it was not up to the Board's staff to seek out evidence which would invalidate the election. Rather, "the burden" was "on * * * [the Employer] to show that it [the election] was not" fairly conducted. NLRB v. O. K. Van Storage, Inc., 5 Cir., 1961, supra, 297 F.2d at 75.

The Employer fails in this attack for a further double reason. The law's conclusion on the substantive contention of unauthorized supervisory electioneering made it unnecessary procedurally to have a further hearing. This means, of course, that we reject the importunities to reconsider and overrule NLRB v. Air Control Prods., Inc., supra.

We there held that known, unauthorized, pre-election, pro-union campaigning by supervisors may not be the basis for the Employer attacking the Union's victory

"Whether such activity is a ground for setting aside an election if conducted behind the Employer's back, the Board has held where the Employer is aware of such conduct and takes no steps to dissipate its effects, he may not rely on it as a basis for setting aside the election. * * * Unless the distinction is made between supervisory advocacy which the Employer knows of and that which goes on behind his back, we would, in the former situation be allowing the Employer to take advantage of wrongdoing for which he has an operational responsibility" 335 F.2d at 250.

Of course, the Employer does not, cannot, contend that it did not know what was going on. Everytime the Employer put pen to hand, either in communications to all employees, or in its numerous motions and pleadings in both Board proceedings, it complained vigorously of the activities of these supervisors. But more important, in the papers before the Board in the RC proceedings, it was equally positive that it made three things clear to the employees being subjected to the electioneering: first, the foremen were supervisors; second, the Employer urged the employees to reject the Union; and third, the foremen were not speaking for

12. The Objection urged:
"4.
"The Regional Director knew that all employees of Employer had been notified of the supervisory status of the said five supervisors by reason of the fact that a Motion to Reopen Record was filed with the Regional Director on July 15, 1963; but in spite of said notice to the Regional Director, no effort to clarify the confusion created thereby was made by the Regional Director.
"* * * *
"6.
"Employer has repeatedly called the attention of the Regional Director to the fact that the campaign of organizing the employees of the Employer was conceived, instigated, conducted and at all

times, up to and including the date of the election, furthered by the said five supervisors * * * and by causing the employees to be notified that the five supervisors would be allowed to vote and by allowing said supervisors to vote in the election, the Regional Director unfairly and illegally advanced the cause of the Union and prevented a fair election.
"* * * *
"8.
"The said election, as conducted, represents the ability of the supervisors to dominate and control their employees, and the complete subservience of the employees to their supervisors, rather than an election where the uncoerced will of the majority of employees was shown."

management and each employee was free to decide for himself.[13]

■ On the unfair labor practice hearing, the evidence proffered would have established nothing more than open, known, unauthorized, active pro-union electioneering before and after July 15, but all before the election. Such violations of the law by supervisors, whose conduct was categorically disavowed by management in its strong plea for all freely to vote his convictions, do not afford the Employer a basis for challenging the election. There was thus no reason to "hear" what was legally insignificant.[14] NLRB v. Air Control Prods., Inc., supra, 335 F.2d at 249.

Order enforced.

13. One letter to all employees stated:
"*You are free to vote as you see fit in this election.* However, we think you will be interested in the position of the Cooperative.

"The Cooperative has objected to this election because the line crew foremen and the right-of-way foremen are being allowed to vote. The posted notices show that supervisors are not eligible to vote. Yet the Labor Board has ruled that the foremen can vote. This leaves the Cooperative in a most confused position." (Emphasis in original)

The top manager spelled it out in more detail:

"As you know, the [Union] * * * demanded that this company recognize this union as the bargaining agent for all our employees. We have refused to recognize this union until an election is conducted * * * at which time each of you will be given an opportunity to vote as to whether or not you want to turn over your job and your future to this union.
" * * *

"At the time of this election, you will have a very important decision to make for yourself and your family. Here are some things I would like you to think about before voting in this election:

"A. *Union dues, fines and special assessments*—You have your job now without having to pay anybody any dues, fines or special assessments. Why pay someone to continue on your job?

"B. *Don't be a guinea pig*—There are forty-one electric membership co-ops in the State of Georgia and none of them have a union of any type. Why should we take this risk?

"C. *Strikes and violence*—Unions bring strikes and violence. Why run this risk? We all have obligations that we have to meet regularly such as house notes, automobile notes, etc. Why run the risk of losing this with a strike?
"I hope that you will discuss this matter with your family and your friends and decide what you are going to do. I urge you to think about this very seriously and vote 'NO' and against the union at the time of the election."

Appended was a sample ballot with a bigger square under "NO" and four managerial arrows pointing to that square.

14. There is no suggestion that a more penetrating administrative investigation, see 29 CFR § 102.69(c), would have revealed anything more or different. Consequently, there is naught to this separate attack. Nor is there to other contentions not discussed.