**UNITED STATES RUBBER COMPANY, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 23208.**

United States Court of Appeals Fifth Circuit.

Feb. 20, 1967.

Theo F. Weiss, San Antonio, Tex., Seymour Swerdlow, New York City, for petitioner, Clemens, Knight, Weiss & Spencer, San Antonio, Tex., Arthur, Dry, Kalish, Taylor & Wood, New York City, of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixen, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Asst. Gen. Counsel, Warren M. Laddon, Atty., National Labor Relations Board, Washington, D. C., for respondent.

Before WISDOM, COLEMAN and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge.

In this case United States Rubber Company has been found guilty of an unfair labor practice for refusal to bargain and has been ordered by the Board to bargain.[1] The employer admits refusal to bargain, contending certification of the union, which came after a Board-conducted election, was invalid.[2]

■ Determination of the unfair practice charge was made without hearing. The Trial Examiner granted the motion of the General Counsel for judgment on the pleadings, which was affirmed by the Board.[3] The absence of a hearing arose out of the Board's declining to consider in this unfair practice proceeding evidence offered by the employer that the certification election was invalid, under the rule that this issue was determined (though without hearing) in the election proceeding after the employer filed objections to the election and the employer had not satisfactorily discharged its burden of showing that the evidence proffered was either newly discovered or previously unavailable. Pittsburg Plate Glass Company v. N.L.R.B., 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1940). The Trial Examiner considered a summary of the evidence the employer proposed to offer on the issue of validity of the election, held that the employer could offer none of the evidence at a hearing, hence there were no litigable issues and no reason for a hearing. The employer's guilt was adjudged established by the pleadings and the judgment on the pleadings entered.

■ It is our opinion that the Board has acted arbitrarily and unreasonably. In the representation proceeding it should not have ruled on the employer's objections to the election without a hearing, for there were substantial and material issues which could be determined properly only by a hearing.[4]

In election proceedings the Act provides only for pre-election hearings. If post-election objections are filed the regional director must investigate them. Board Rules and Regulations § 102.69 (c); 29 C.F.R. 102.69(c).[5]

1. With United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO.

2. The bargaining unit consists of employees at a tire proving ground, or test track, operated by the employer at Laredo, Texas. In the election there were 55 votes for the union, 42 against, and 3 challenged ballots which have never been counted.

3. The case is before us by a petition of the employer for review of the decision of the Board finding it in violation of §§ 8(a) (1) and 8(a) (5) of the National Labor Relations Act (29 U.S.C.A. § 151 et seq.). The Board has cross-petitioned seeking enforcement of its order. The representation proceeding cannot come before us by direct review, but where unfair labor practice is charged for refusal to bargain, and the employer has refused to recognize the certification, the election proceeding is before the court for review. The representation case and the unfair labor practice case become as one and the complete record is fully reviewable. N. L.

R. B. v. Tampa Crown Distributors, Inc., 272 F.2d 470 (5th Cir., 1959). American Federation of Labor v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1939). Pittsburg Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 158, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1940).

4. Because of the direction we give the case we need not reach the question whether in the unfair practice stage the employer adequately met the standard of proffering evidence shown to be previously unavailable.

5. § 102.69(c) provides in pertinent part: "If objections are filed to * * * conduct affecting the result of the election, * * * the regional director shall investigate such objections * * * [He] may (1) issue a report on objections * * *, or (2) exercise his authority to decide the case and issue a decision disposing of the issues and directing appropriate action or certifying the results of the election. In either instance, such

The critical objections to the election related to misrepresentations contained in a letter distributed to employees within 24 hours of the election, comparing wage rates and fringe benefits of its test drivers with those of drivers employed at a competitor's test track at Pecos, Texas, where drivers were represented by the same union here concerned. The letter was signed by Y. L. Dominguez, an official representative of the union, who was a test driver at the Pecos track and was on leave of absence to assist in organizing the union at U. S. Rubber's track; he was a leader in the organizational effort and had appeared for the union at the N.L.R.B. representation hearing. The letter purported to be an answer to statements made by U. S. Rubber personnel trying to "run down" the union's contract at the Pecos test track.

The part of the letter charged by the employer to contain the most damaging misstatement was:

"One more thing that the Company failed to mention is this; that we [at Pecos] work six days and the average miles that we drive per day, week or month is only 350 miles. You average over 500 miles. In other words, you are doing six-day [sic] work in only five and getting paid for only five."

The regional director found that the employer did not have adequate opportunity to reply to the letter.

The employer's sworn objections stated in detail respects in which statements in the letter, including that quoted above, were claimed to be false. On the record before us it appears that at least the quoted statement was false. The assertions were serious ones.

"Purportedly authoritative and truthful assertions concerning wages and pensions of the character of those made in this case are not mere prattle; they are the stuff of life for Unions and members, the selfsame subjects concerning which men organize and elect their representatives to bargain." N. L. R. B. v. Houston Chronicle Publishing Company, 300 F.2d 273 (5th Cir., 1962).

In our opinion the objections and the resulting investigation revealed the existence of substantial and material issues which called for a hearing. N. L. R. B. v. Dallas City Packing Co., 230 F.2d 708 (5th Cir., 1956); N. L. R. B. v. West Texas Utilities Co., 214 F.2d 732 (5th Cir., 1954).

Pursuant to the Board regulation the regional director conducted an ex parte investigation. The investigator obtained data from the office manager of the Pecos track bearing on the truth of Dominguez's statements. Reading, construing and applying the data, and measuring the facts revealed against what the letter said, required consideration of many variables—including number of days of work, hourly rates of pay, average number of miles driven per day, whether an auto or truck is driven, speed of the test, whether the test is one which though at slower speed is more difficult and tiring than one conducted at higher speeds.[6]

The regional director recognized the existence of the variables that tended to make average mileage figures not properly comparable, then adopted from the Pecos data an average mileage per day figure for Pecos drivers of 375 which considered none of the variables. He then dismissed as immaterial the difference between this figure and the represented figure of 350. In addition the

---

action by the regional director may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, on the basis of a hearing before a hearing officer, designated by the regional director. * * *"

6. Another variable mentioned in the affidavit of the Pecos office manager but not referred to in the regional director's report is that drivers on the midnight shift drive more miles than those on the other two shifts. By affidavit the employer contends that its drivers spend less actual driving time in each eight-hour shift than do Pecos drivers. Also it contends the 500-mile figure stated in the letter for its drivers is false.

affidavit given the investigator by the Pecos office manager identified the 375 figure as the average for a *vehicle* in a day and pointed out the average for a Pecos *driver* would be a greater figure.

A Board hearing was the proper forum to consider these intricate figures, variables and details of operation.

■ The regional director's report characterized the above-quoted statement in the letter as ambiguous, subject to different interpretations and highly improbable to mislead the voters. To us it is neither minor nor meaningless but means exactly what it says—that, as compared with the Pecos competitor, the employer requires its employees to do six days work but pays them only for five. The qualifications, exceptions, conditions and variables recognized by the regional director are what is uncertain, not what the letter states. Dominguez and the union had special knowledge of the facts asserted about Pecos, tending to inspire reliance by U. S. Rubber drivers on what Dominguez said. N. L. R. B. v. Houston Chronicle Publishing Company, supra. Those with the superior knowledge revealed none of the variables and conditions which would have tended to show that the fixed and certain figure represented for Pecos was (in addition to being wrong) not even capable of being put in form suitable for comparison.

■■ At subsequent stages the employer has submitted affidavits that the information obtained by the Board investigator from the office manager at Pecos was neither clear nor detailed nor understood by the investigator, and that the investigator should have talked to the track manager at Pecos instead of the office manager. The Board replies that the employer didn't tell them his name. The employer in rebuttal says it did tell the investigator his name and insisted he should be interviewed. Important rights do not turn on these refined

and distilled distinctions. To be entitled to a hearing the objector must supply the Board with specific evidence which prima facie would warrant setting aside the election, for it is not up to the Board staff to seek out evidence that would warrant setting aside the election. N. L. R. B. v. Douglas County Electric Membership Corp., 358 F.2d 125, 129 (5th Cir., 1966); N. L. R. B. v. O. K. Van Storage, Inc., 297 F.2d 74 (5th Cir., 1961). Just how specific must the evidence be to meet the standard? Here the objections were not "nebulous and declamatory assertions, wholly unspecified," [7] nor equivocal hearsay,[8] but clearly put in issue the correctness of what was said in the letter—this was "specific evidence of specific events from or about specific people." [9]

■ The Board regulation says the regional director "shall investigate." Here requirements of specificity were met once the investigator knew the critical issue was the truth of the comparison of wages and benefits at Pecos with those at U. S. Rubber as set out in the letter. There was no duty on the objector to tell the investigator what named person to interview to get operating data from the files of an identified competitor, nor any duty to see that the investigator obtained correct data or properly construed what he got.

■■ The investigator was not misled. He contacted Pecos and secured data. If the investigation itself reveals, as it did here, that material factual issues exist which can be resolved only by a hearing, then a hearing must be held; once the investigator discovers facts by his investigation it becomes immaterial that there was a pre-investigation failure to supply him with specific evidence of what he later discovered. The requirement of specific evidence is a guide to enable the investigator to discover the

7. Fay v. Douds, 172 F.2d 720 (2d Cir., 1949).

8. N. L. R. B. v. O. K. Van Storage, Inc., supra.

9. N. L. R. B. v. Douglas County Electric Membership Corp., supra.

facts, not a procedural device that minimizes the impact of facts discovered.

We are aware of the policy of avoiding lengthy and unnecessary hearings, expeditiously resolving questions preliminary to the establishment of the bargaining relationship, and avoiding dilatory tactics by those disappointed in the election returns. N. L. R. B. v. Douglas County Electric Membership Corp., supra; N. L. R. B. v. O. K. Van Storage, Inc., supra; N. L. R. B. v. Joclin Manufacturing Company, 314 F.2d 627 (2d Cir., 1963). But this policy cannot operate to deprive the employer of a hearing in circumstances where it is entitled thereto.

The order of the Board is set aside and the case is remanded to the Board to first conduct a full hearing on objections numbered 8, 9, 10, 11 and 12 to the election, without limiting the evidence by considerations of when discovered or whether previously available, and thereafter to determine under appropriate rules, regulations and procedures the unfair labor practice charge.