**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COMMERCIAL LETTER, INC., Respondent.**

No. 71–1246.

United States Court of Appeals, Eighth Circuit.

Jan. 18, 1972.

As Amended Feb. 11, 1972.

Lay, Circuit Judge, concurred.

---

19. See Maguire et al. v. Trans World Airlines, 70 Civ. 3947 (S.D.N.Y.).

**110**

Arnold Ordman, Gen. Counsel, Stephen C. Yohay, Atty., Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Leonard M. Wagman, Atty., N. L. R. B., Washington, D. C., Joseph H. Solien, Director, Region 14, N. L. R. B., St. Louis, Mo., for petitioner.

Jerome Kalishman, Blumenfeld, Kalishman, Marx & Tureen, Bruce S. Feldacker, Schuchat, Cook & Werner, St. Louis, Mo., for respondent.

Before VOGEL, Senior Circuit Judge, and GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

The National Labor Relations Board seeks enforcement of its bargaining order issued against Commercial Letter, Inc. on March 4, 1971.[1]  The Board's decision and order are reported at 188 N. L.R.B. No. 132.  Commercial Letter admits the acts charged but denies that these constitute violative acts because of the invalidity of the representation election certification.

The sole issue presented for review is whether the Board properly certified the Union as the bargaining representative.

---

1.  The Board found that Commercial Letter violated §§ 8(a) (5) and (1) of the Act (29 U.S.C. §§ 158(a) (5) and (1)) by refusing to bargain with Lithographers and Photoengravers International Union, Local 252, AFL–CIO, bargaining directly with unit employees, refusing to provide bargaining information, and effecting unilateral changes in terms and conditions of employment.

The Union won the election in a 7 to 5 vote. Commercial Letter filed objections, complaining of Union reimbursement to eight employees for attendance at representation case hearings held prior to the election. The Regional Director conducted an investigation, exonerated the Union and concluded that there was no substantial and material factual issue which would entitle the employer to a hearing under the regulations of 29 C.F.R. § 102.69(c). Commercial Letter filed exceptions to the Regional Director's decision and requested a hearing. The Board denied the request for review on the ground that it raised no substantial issues warranting review and later granted summary judgment on the unfair labor practice complaint on the basis that there were no facts in dispute and Commercial Letter's attack was on the legal conclusion reached by the Regional Director.

The representation case hearings were held on June 5, and June 19, 1970. The Union subpoenaed eight employees to appear at one or both of these hearings. There is nothing in the record to indicate the extent to which these employees testified at the hearing except the ambiguous statement contained in the Regional Director's Supplemental Decision and Certificate of Representation that "some of them testified." This statement could easily be read to mean that not all of them testified. These employees were paid various sums of money by the Union allegedly in reimbursement for wages lost while attending the hearings. Six of the employees were paid on or about July 21, 1970, the seventh was paid on or about July 28, and

the eighth was paid on the evening of August 4 (the evening before the scheduled representation election) by a check, postdated to August 5, 1970. The Regional Director found that none of the employees were paid in excess of what they would have earned had they worked instead of attending the hearing; as to the delay in paying the eighth employee, he found no intent to influence the employee's vote by the election eve postdated check in the amount of $54.78.

▆ As a matter of policy, preliminary questions relating to the establishment of the bargaining relationship pursuant to a representation election should be expeditiously resolved, N.L.R.B. v. O. K. Van Storage Inc., 297 F.2d 74 (5th Cir. 1961); and the Board will grant a hearing only if the objector to the election raises "substantial and material issues." Board Rules and Regulations 29 C.F.R. § 102.69(c).

▆ The Board has approached the problem of gifts or payments by labor or management on a pragmatic basis, based on the broad standard of whether the payment was intended to or would influence the election and thus impair a free choice on the part of the employees. A union's preelection payment or gift made to prospective voters in a representation election is ground for setting aside the election. General Cable Corp., 170 N.L.R.B. 1682 (1968); Wagner Electric Corp., 167 N.L.R.B. 532 (1967); Teletype Corp., 122 N.L.R.B. 1594 (1959). However reimbursements of employee's out-of-pocket expenses with an express disclaimer of intent to influence votes were found permissible in Federal Silk Mills, 107 N.L.R.B. 876 (1954).[2]

2. In *Federal Silk Mills* the union paid a number of employees who were also drivers for car pools which brought other employees to work, three dollars for expenses of driving their cars to the polling places located some distance from the plant. The Hearing Examiner found that the payments were a good faith attempt to eliminate possible difficulties the car-pool passengers might encounter on election day if transportation were not provided for them. The Hearing Examiner nonetheless held this constituted an unfair labor practice. The Board held the payment did not warrant setting the election (won by the union 213 to 99) aside as the Union took adequate measures to make plain to the employees the reason for the payments and the fact there was no obligation to vote for the Union and further the payments did not affect the outcome of this election. Nonetheless the Board said the transportation plan "should best have been avoided, because the plan involved eligible voters and was easily subject to abuse." 107 N.L.R.B. at 878.

The questions raised here are obvious. Did the employees actually attend the hearing? How long were they at the hearing each day? Did they receive compensation from any other source during that period of time? Were their witness fees and expenses also paid by the Union as the summoning party as required by the National Labor Relations Act, and the regulations?[3] What did the employees think was the purpose of the payments? Perhaps the most relevant question would be why did the Union subpoena eight employees, a number that would give them a majority in the unit of 12 and how did it choose the employees it wished to attend? The answers to all these questions have relevance to the intent of the Union in making the payments as well as to the effect that the payments might have on the employees' free choice and the election process. If the payments were grossly disproportionate to the time spent, it seems clear that the payments would have a tendency to influence the election results. Collins & Aikman Corp. v. N.L.R.B., 383 F.2d 722, 729 (4th Cir. 1967).[4] "There can be no question but that freedom of choice may be seriously interfered with by economic inducements." N.L.R.B. v. Gilmore Industries, Inc., 341 F.2d 240, 241 (6th Cir. 1965).

■ Here the circumstances in which the payments, ostensibly reimbursement for expenses, were made are obviously of vital importance in determining whether or not they were made for the purpose or with the intent to influence the election. These payments on their face are questionable. They raise substantial factual issues that should be further investigated, calling for an adversary hearing. There is no showing who testified, the necessity for that testimony, the time taken in testifying, and wheth-

er the employees spent full time at the hearings or used the occasion for a limited vacation. This practice of subpoenaing a majority of employees in a representation unit and paying them in excess of a nominal amount is insidiously harmful, subject to potential abuse and should not be encouraged. *See Federal Silk Mills, supra,* n. 2.

This court has also held that "the timing and the proportionate impact of the objectionable activity on the outcome of the election weigh heavily." N.L.R.B. v. Blades Mfg. Co., 344 F.2d 998, 1003 (8th Cir. 1965). Thus the timing of the final payment to the eighth employee is critical and needs to be explored in greater depth than the Regional Director's investigation provided.

■ These facts in the instant case warranted a hearing. One function which the courts of appeals must serve in the enforcement of N.L.R.B. orders is set out in N.L.R.B. v. Indiana & Michigan Electric Co., 318 U.S. 9, 28, 63 S.Ct. 394, 405, 87 L.Ed. 579 (1943).

> "[C]ourts which are required upon a limited review to lend their enforcement powers to the Board's orders are granted some discretion to see that the hearings out of which the conclusive findings emanate do not shut off a party's right to produce evidence or conduct cross-examination material to the issue."

We believe that the term "hearings", used where that was the issue in the case, may be properly expanded to "proceedings" where the Board seeks to cut off a party's right to produce evidence without a hearing. The duty of this court then is to see that the procedure followed by the Board did not "shut off a party's right to produce evidence or conduct cross-examination material to

---

3. 29 U.S.C. § 161(4) provides that witnesses summoned before the Board, its member, agent or agency shall be paid the same fees and mileage that are paid witnesses in the courts of the United States. 29 C.F.R. § 102.66(g) provides that the fees and mileage are to be paid by the party at whose instance the witness appears.

4. In Collins & Aikman Corp. v. N. L. R. B., *supra* the Union had promised to pay one employee the full amount of his daily wage for serving as the union observer at the election for a period of one and one-half hours. The court held this conduct "undoubtedly had a tendency to influence the election results." 383 F.2d at 729.

the issue." The Board's procedure here effectively denied a hearing, confrontation and right of cross-examination, substituting therefore an ex parte administrative fiat that provided no answers to the material questions raised by the Union's payment to a majority of the employees in the unit.

█ The Board maintains that the issue of the effect of the payments on the election has been litigated at some prior point in the election proceedings and that the employer is not entitled to relitigate this issue in the unfair labor practices proceeding, citing Magnesium Casting Co. v. N.L.R.B., 401 U.S. 137, 91 S. Ct. 599, 27 L.Ed.2d 735 (1971); Pittsburg Plate Glass Co. v. N.L.R.B., 313 U. S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); and N.L.R.B. v. Parkhurst Manufacturing Co., 317 F.2d 513 (8th Cir. 1963). We do not think these cases are in point. *Parkhurst* involved a consent election and the court made it clear that the results reached on the election objections were based on the agreement between the parties. Both *Magnesium Casting* and *Pittsburg Plate Glass* involved a question relating to the determination of the bargaining unit for collective bargaining. The employer sought to have the correctness of the determination reviewed in the unfair labor practices hearing, which review was denied.

The National Labor Relations Act, 29 U.S.C. § 141 et seq., provides for a hearing and a Board review of the bargaining unit issue prior to an election being ordered. 29 U.S.C. § 159(c). These hearings may be waived by consent of the parties, § 159(c) (4), but are otherwise mandatory. 29 C.F.R. § 102.63. When there is a petition for enforcement or review of a Board order which is based in whole or part on facts certified following this representation proceeding, the record of this proceeding is part of the record which must be filed with the reviewing court and the decree of the reviewing court is made on the whole record, including the record of the representation proceeding. § 159(d).

Having once heard the evidence and determined the appropriateness of a bargaining unit, the Board need not reconsider the question in the hearing on an unfair labor practice, Pittsburg Plate Glass Co. v. N.L.R.B., 313 U.S. at 162, 61 S.Ct. 908; Magnesium Casting Co. v. N.L.R.B., 401 U.S. at 141, 91 S.Ct. 599, even though the employer's defense rests on the inappropriateness of the unit determination by the Board. Through the record of the representation proceeding, the issues are preserved for judicial review. N.L.R.B. v. Union Brothers, Inc., 403 F.2d 883 (4th Cir. 1968). It should be noted that there is the opportunity and right to present evidence at the representation hearing. § 159(c).

The Board, in any event has ruled that evidence of an unfair labor practice is not admissible in the representation hearing whether the practice is by the employer, Flint Manufacturing Co., 62 N.L.R.B. 1003, 1004 n. 2 (1945), or by the Union, Bush Woolen Mills, Inc., 76 N.L.R.B. 618, 620 n. 5 (1948); P. R. Mallory & Co., Inc., 89 N.L.R.B. 962, 963 n. 3 (1950).

Thus the Board, if it maintains that this issue has been litigated at some point prior to the unfair labor practices proceeding, must be relying on the certification by the Regional Director. This falls far short of any litigated proceeding standard. Most importantly, there is no procedure by which the truth of the statements made by an opposing party can be tested by cross-examination and credibility judged by examination under oath. "Findings cannot be said to have been fairly reached unless material evidence which might impeach, as well as that which will support, its findings, is heard and weighed." N.L.R.B. v. Indiana & Michigan Electric Co., 318 U.S. at 28, 63 S.Ct. at 405. Certainly the Board relied on the evidence which its investigation produced to overrule the objections and certify the Union, but it is apparent that the employer was foreclosed from the opportunity of producing evidence that might rebut the statements made by the Union, or subjecting

these self-serving statements to the cleansing rigors of cross-examination. Both *Federal Silk Mills, supra,* and *Collins & Aikman, supra* provided plenary hearings. Here, no hearing was afforded.

The Board's contention that there is no dispute as to these facts and thus there is no substantial and material factual issue is patently without substance. The mere fact the payments were made causes the election to be suspect. While the report of the Regional Director advances certain reasons which the investigation determined to be the reasons for the amount and timing of the payments, these are facts which are solely within the knowledge of the Union, and should be tested by cross-examination rather than accepted at face value as the Regional Director did. The intent of the Union in making the payments, as evidenced by the steps that they took or failed to take to prevent any misconception on the part of those receiving the payments is certainly a substantial and material fact. *Federal Silk Mills* is clearly no precedent for these payments.

The conclusion is inescapable that substantial and material factual issues were raised at the post-election stage and the Board improperly denied a hearing to Commercial Letter before overruling its objections to the election.

■ Where the Board has denied to a party the right to present evidence in the certification hearing on substantial and material issues, the party is entitled to raise the issue in an unfair labor practices proceeding. N.L.R.B. v. Poinsett Lumber & Mfg. Co., 221 F.2d 121 (4th Cir. 1955); N.L.R.B. v. Lord Baltimore Press, Inc., 300 F.2d 671 (4th Cir. 1962); N.L.R.B. v. Capital Bakers, Inc., 351 F.2d 45 (3d Cir. 1965).

■ Due process demands that the right to a hearing on an unfair labor practice, granted by the National Labor Relations Act, not be circumvented by the ex parte investigatory proceedings established in the Board regulations for the certification proceedings. Had a hearing been granted in the certification process it would have sufficed as the parties would have had an opportunity to present evidence. However, the decision to deny a hearing, under the procedures followed by the Regional Director, does not represent an administrative adjudication of the issues, but can only be called a determination by the Regional Director to foreclose litigation of the issues at that time.[5] At some point in the administrative process the employer is entitled to have an opportunity to present the evidence upon which he relies and to question the evidence upon which the Board relies, and to submit this evidence for consideration by the Board and by this court in proceedings to enforce or set aside the Board's order.[6] *See* N.L.R.B. v. Addison Shoe Corp., 450 F.2d 115 (8th Cir. 1971).

The cause is remanded to the Board for hearing on the issues discussed. We express no opinion on the merits. Enforcement denied.

LAY, Circuit Judge (concurring).

I concur in the majority holding that the Regional Director should have granted a hearing on the company's objection to the union's certification. However, I cannot endorse the majority opinion's condemnation of the union's reimbursement of employees for expenses incurred in attending a representation hearing. This issue is not really before us. Nevertheless, the majority opinion characterizes the union's conduct as "suspect,"

---

5. We do not say that every contention, regardless of merit need be litigated. Where, however, the known or uncontested facts show a need for further inquiry, an opportunity to be heard and cross-examine must be provided. *See* N. L. R. B. v. Herman Wilson Lumber Company, 452 F.2d 93 (8th Cir. 1971).

6. As here, where the facts indicate a substantial possibility of abuse, a plenary inquiry would clear the air and more easily carry out the purposes of the Act in establishing more harmonious labor-management relations.

"insidiously harmful" and "not to be encouraged." In doing so, it implies that the conduct which is now to be the central issue of a hearing is essentially misconduct and thus the election in all events is tainted. This approach almost mandates that the election should be set aside. I think this unfortunate for two reasons: (1) it misconstrues the underlying bases for granting a hearing, and (2) it ignores established and approved rights of the union.

The Board's rules and regulations require a hearing when "substantial and material factual issues" exist which can only be resolved after a hearing. 29 C. F.R. 102.69(c), (e) (1969). There is little doubt that such an administrative standard embodies the constitutional standard of due process. N.L.R.B. v. Singleton Packing Corp., 418 F.2d 275, 280 (5 Cir. 1969). When objections are raised to the Regional Director's certification of the union whether an evidentiary hearing is required depends upon two fundamental questions: (1) assuming the company's evidence to be true, would it produce an adverse effect on an individual's free choice so as to require the election be set aside,[1] and (2) if so, has a substantial and material issue of fact been raised.

Whether the election must be overturned is generally a matter committed to the Board's discretion. N.L.R.B. v. El-Ge Potato Chip Co., Inc., 427 F.2d 903 (3 Cir. 1970). However, this is not "unfettered administrative discretion." Sonoco Products Co. v. N.L.R.B., 399 F. 2d 835, 839 (9 Cir. 1968). The Board's overall conclusion as to certification must be supported by substantial evidence on the record considered as a whole. Magnesium Casting Co. v. N.L. R.B., 401 U.S. 137, 91 S.Ct. 599, 27 L. Ed.2d 735 (1971); Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

In the instant case the company challenged the election because a union check post-dated to after the election was given to an employee on the election eve. The company contends that payment of the check was intended to be contingent on the employee's "proper" vote. The company also claims that other employees were wrongfully paid monies with the intent to influence their vote. The election was close: 7–5 for the union. If only one vote was wrongfully obtained, the election would have to be set aside. Clearly, if the company's contentions were true, it would be an abuse of discretion for the Board to find the election untainted by such conduct.

The state of the record is, therefore, highly important in determining the correctness of the Board's ultimate conclusion. Discretion cannot be properly exercised when based on a record that fails to present a full exposition of conflicting evidence. Although an inadequate record may provide the Board with some support for its conclusions, such proof cannot meet the test required upon judicial review. Thus, the second question, whether a factual issue existed which required an evidentiary hearing, is the more searching inquiry here.

The union admits to making the payments but denies the company's allegation of wrongful intent. Thus, the Board argues that the facts are not disputed and that the company is merely arguing against the conclusion which the Regional Director and Board have reached from the admitted evidence. It is true the historic events are not factually controverted. However, the essential controversy centers not only on the ultimate conclusion made by the Regional Director, i. e., that the election was not tainted, but as well on the essential factual inference of intent which must be drawn from the over-all events. The company contends that had it been granted an evidentiary hearing, it could have exposed the union's wrongful intent by examining the employees and officials involved.

The Fifth Circuit has stated that the test for granting or denying a hearing

1. Cf. N. L. R. B. v. Golden Age Beverage Co., 415 F.2d 26, 33 (5 Cir. 1969).

is similar to that applied in granting a summary judgment. Apropos to the instant facts that circuit has observed:

"When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment. See Alabama Great So. R.R. [Co.] v. Louisville & N. R. R. [Co.], 224 F.2d 1, 5 * * * (5th Cir. 1955). It is important, and ordinarily essential, that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-examination, of a witness whose subjective motive is at issue." N.L.R.B. v. Smith Industries, Inc., 403 F.2d 889, 895 (5 Cir. 1968) citing Consolidated Electric Co. v. United States, 355 F.2d 437, 438–439 (9 Cir. 1966).

On these narrow bases, weighing the overall facts and disputed inferences, together with the closeness of the election, I feel a hearing is required. A record incorporating direct testimony on the disputed issue of intent will present a more substantial base for the Board's determination of this matter.

With these principles in mind, I think it should be clear, however the mere fact that a union reimburses expenses to employees for attendance at a representation hearing is neither odious nor "suspect" conduct.[2]

---

2. Payments in cash or in kind made to an employee by either a union or an employer during an election do not give rise to a per se inference that the employee's free choice was thereby destroyed. Collins & Aikman Corp. v. N. L. R. B., 383 F.2d 722, 729 (4 Cir. 1967) ; Shoreline Enterprises of America, 114 N.L.R.B. 716 (1955). It is clear that an election would be tainted by payments made to employees as obvious bribes, General Cable Corp., 170 N.L.R.B. No. 172 (1968) [Union distribution of $5 gift certificates to all employees whether in attendance at union meeting or not], or by payments so excessive as to constitute a patent attempt to buy votes, Teletype Corp., 122 N.L.R.B. 1594 (1959) [rival unions paying increasing amounts to obtain attendance at pre-election meetings]. Where an alleged inducement affords a tangible economic benefit by enhancing an employee's financial position, the Board has found that the employee is thereby subjected to constraint to vote for the donor. Wagner Electric Corp., 167 N.L.R.B. No. 75 (1967) [Union offered life-insurance coverage to all prospective voters who applied for union membership.]

However, not all economic inducements are deemed to interfere with the employee's free choice. It has long been recognized that a union's offer to waive initiation fees is a proper non-coercive means of attracting union votes. N. L. R. B. v. Dit-Mco Inc., 428 F.2d 775 (8 Cir. 1970). A union may also enhance its image by refunding to employees amounts previously deducted from their wages for a strike fund. Primco Casting Corp., 174 N.L.R.B. No. 44 (1969). Payments to election observers, expense reimbursements to car pool drivers who transport voters and payments of "lunch money" to employees who attend pre-election meetings have all been upheld in the absence of a showing that such payments were excessive or were conditioned upon how the employee voted. Shoreline Enterprises of America, 114 N.L.R.B. 716 (1955) ; Federal Silk Mills, 107 N.L.R.B. 876 (1954) ; Jat Transportation Co., 131 N.L.R.B. 122 (1961). Raffles, door prides, and gifts of negligible value have also been found to be legitimate means of encouraging attendance at pre-election meetings. Jacqueline Cochran, Inc., 177 N.L.R.B. No. 39 (1969) ; Hollywood Plastics, Inc., 177 N.L.R.B. No. 40 (1969) ; Bordo Products Co., 119 N.L.R.B. 79 (1957).

Rather than suggesting guiltless acts to be "insidiously harmful," I would base a more proper criteria for distinguishing approved from non-approved payments on the following : (1) Whether the value of the gift was so negligible that it could not reasonably have influenced the donee's vote ; (2) whether the payor conditioned the payment upon a vote in his favor ; (3) whether the amount of the payment exceeded the value of the services rendered ; (4) whether the payor made clear and the employee understood that the purpose of the payment was not to influence votes ; (5) whether the economic position of the employee was enhanced to such an extent that he would feel obligated to vote for the donor ; or (6) whether the donor's conduct was so blatant as to be an obvious attempt to buy votes.